COCA–COLA CO. v. KOKE CO. OF AMERICA et al.

(District Court, D. Arizona.   July 6, 1916.)

1. TRADE-MARKS AND TRADE-NAMES ⬳68—UNFAIR COMPETITION—RIGHTS OF MANUFACTURER.

One manufacturer has no right to dispose of its goods as though they were the goods of another, and if the facts show such a disposal, relief will be granted.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 79;  Dec. Dig. ⬳68.]

2. TRADE-MARKS AND TRADE-NAMES ⬳70(1)—UNFAIR COMPETITION—ACTIONS —RIGHT OF.

The Coca-Cola Company, having a valid trade-mark in the name "Coca-Cola," spent large sums in advertising its beverage, and the drink acquired the name, as among users, "Koke" and "Dope." Defendants began to manufacture beverages similar in appearance and taste to that of the Coca-Cola Company, selling them under the names "Koke" and "Dope." Defendants used bottles and receptacles similar in appearance to those used by the Coca-Cola Company, and their salesmen attempted to substitute their beverages with the trade for that of the Coca-Cola Company, inducing proprietors of soda fountains to furnish their beverages when customers called for "Koke" or "Dope." *Held*, that defendants were guilty of attempting to dispose of their beverages as that of the Coca-Cola Company and will be enjoined.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81;  Dec. Dig. ⬳70(1).]

3. TRADE-MARKS AND TRADE-NAMES ⬳99—UNFAIR COMPETITION—RELIEF.

No one is entitled to pass off his goods as those of another; but, in a suit to enjoin unfair competition, the question whether defendant has passed off his goods as those of another is one of fact, depending on all the circumstances.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 113;  Dec. Dig. ⬳99.]

In Equity.  Bill by the Coca-Cola Company against the Koke Company of America and others.  Decree for complainant.

Harold Hirsch, of Atlanta, Ga., Edward S. Rogers, of Chicago, Ill., and Joseph E. Morrison, of Phœnix, Ariz. (Frank F. Reed, of Chicago, Ill., and Candler, Thomson & Hirsch, of Atlanta, Ga., of counsel), for complainant.

Richard E. Sloan and James Westervelt, both of Phœnix, Ariz., and Augustine B. Littleton, of Chattanooga, Tenn. (Littleton, Littleton & Littleton, of Chattanooga, Tenn., of counsel), for defendants.

SAWTELLE, District Judge.  The bill in this case seeks relief by injunction, both preliminary and perpetual, against the defendants because of their joint and several infringement of the plaintiff's trademark, "Coca-Cola," and for unfair competition on their part.  It also asks an accounting of the profits received by defendants, and the assessment of damages sustained by plaintiff.

The material allegations of the bill, so far as they are necessary to be set forth for the determination of the issues made, are as follows:

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The first section of the bill recites the initial manufacture of the syrup known as "Coca-Cola" by J. S. Pemberton in the year 1886, and traces the title through its various transfers into the plaintiff company on February 22, 1892. It is alleged that the process and formula for the manufacture of the beverage and syrup styled "Coca-Cola" was new and original, and was invented and discovered by plaintiff and its predecessors as a trade and business formula, process, and secret, and is now a secret formula and process, and not known to the public or others than the plaintiff and its officers and employés and the predecessors of plaintiff.

The second section of the bill charges the continued manufacture of syrup made under the Pemberton formula; alleges that the trade-mark, "Coca-Cola," was, at the time of its adoption by the predecessors of plaintiff, characteristic and distinctive, and had never before been used by any one, and has continuously been used for the purpose of distinguishing the product of plaintiff and its predecessors from the similar product of others, and that said trade-mark does now identify and distinguish plaintiff's product. It is further charged that plaintiff's product has been given by the purchasers and consumers thereof certain nicknames, to wit, "Koke" and "Dope," and that each of these words are now, and for many years past and prior to the application of either of them to any other beverage, recognized and commonly and familiarly used as nicknames for Coca-Cola, and that a request for either is understood, both by the seller and the purchaser, to be a specific and definite request for Coca-Cola, and has been so understood and regarded and acted on, both by the seller and purchaser, for many years prior to the manufacture or sale of any other preparation under either of said names, and that at the present time both dispensers and consumers use these words as a descriptive of the product of plaintiff, and for no other beverage.

The third section of the bill alleges the application to the patent office for the registration of the words "Coca-Cola" as a trade-mark on May 14, 1892, and the allowance of said application on January 31, 1893, and the issuance of a certificate of registration on that day, which is alleged to be in full force and wholly unrevoked and uncanceled. It is also alleged that on April 23, 1905, under and by virtue of Act Cong. Feb. 20, 1905, c. 592, 35 Stat. 592 (Comp. St. 1913, §§ 9485–9516), the plaintiff duly applied to the Patent Office of the United States for the registration of the said trade-mark "Coca-Cola," and complied in all respects with said act and the regulations of the Commissioner of Patents, and thereupon the registration of said trade-mark "Coca-Cola" was duly allowed for tonic beverages and syrups for the manufacture of such beverages and a certificate of registration, No. 47,189, was duly granted to the plaintiff on October 31, 1905, and is still in full force and effect, and that plaintiff is entitled to the sale and exclusive right, both generally and in interstate commerce, to use and employ said trade-mark on its goods.

The fourth section of the bill alleges the sale of both the syrup and of an aerated beverage, permitted to be manufactured from the syrup by certain licenses of plaintiff, under the trade-name, in distinctive

receptacles, bottles, and barrels and labels, all of which were adopted by plaintiff for the purpose of distinguishing the product of plaintiff from that of other manufacturers in the same lines.

The fifth paragraph sets up that the plaintiff has expended much time, labor, and money in advertising its product. It is alleged that the Koke Company of America was organized under the laws of the state of Arizona about September 15, 1911, and thereafter proceeded in the city of St. Louis to manufacture an unnecessary and deliberate imitation of plaintiff's Coca-Cola syrup, but different therefrom and greatly inferior thereto, and placed the same in barrels and packages similar to those of plaintiff; that said extract is designated by the defendants sometimes as "Koke," and sometimes as "Dope"; that the Koke Company of America ships said imitative extract from the city of St. Louis, usually under the name of "Koke," to the other defendants; and that said extract is used by said defendants as a basis for making a syrup for sale to soda fountains, and in bottles which resemble the articles produced by plaintiff, and that the defendants, as a matter of fact, do sell, substitute, and palm off the said syrup and extract as and for the Coca-Cola products of plaintiff. It is alleged that the said imitation product is, with the consent of defendants, sold to the public in substitution for genuine Coca-Cola. It is further charged that the defendants adopted the words "Koke" and "Dope" as a name for their product many years after the words were commonly used to describe the plaintiff's product, and that said adoption was a means to enable them to substitute their product for that of the plaintiff, and to reap the benefit of its advertising and labor in dispensing and selling said product. It is also alleged that the defendants stated, both to bottlers and dispensers, that the syrup they made was produced under the same formula as Coca-Cola, and instructed both dispensers and bottlers to substitute their product when the purchaser desired and intended to obtain Coca-Cola.

It is further alleged that the registration in the patent office of the words "Koke" and "Dope" claimed by defendants was in fraud of the rights of plaintiff, and that the defendants threaten to sue dealers and dispensers who deliver Coca-Cola when "Koke" and "Dope" are called for, and when both the dispenser and purchaser design to sell and receive Coca-Cola.

The answer denies all the material allegations of the bill, and, after setting up the manner of acquiring title to the trade-names "Koke" and "Dope," denies that, at the time they were adopted by their predecessors, they were generally used as a synonym or nickname of plaintiff's product. The answer then alleges that the plaintiff has been and is now, engaged in establishing a monopoly, and that the business of defendants and their patrons is being subjected to a system of espionage by plaintiff and its officers and agents, and agents are using the information thus acquired to impede and harass the customers of defendants, representing that the business of defendants is fraudulent and dishonest and its product inferior imitations of Coca-Cola, and threatening prosecutions if defendants' products are dealt in by its customers. The answer then alleges that by reason of these representations and threats

many of its customers have ceased to deal in its product, to its damage. It is also contended in the answer that the name "Coca-Cola" was deceptive as a trade-mark, and for that reason was fraudulent, and was but a descriptive name for a product which the plaintiff does not now produce.

Numerous authorities have been cited by both sides, with variant facts; but, as each case must be determined on all the facts that surround it, the facts in any prior case cannot be a guide to the decision of the subsequent. This view is cogently pointed out on page 3 of lectures of John Cutler, of King's College, entitled "Passing Off."

[1, 2] The fundamental principle of the law applicable to this class of cases is well established. It may be thus stated:

"No man has a right to pass off his goods as though they were the goods of another."

"The essence of the wrong consists in the sale of the goods of one manufacturer or vendor as those of another." Canal Company v. Clark, 13 Wall. 311, 20 L. Ed. 581.

· The difficulties which arise are in the application of this principle to the facts of the particular case, and the question which the court has to decide is always a question of fact. The decision of the court depends upon all the circumstances affecting the plaintiff and his trade and the circumstances affecting the defendant and his trade, and both alike must be considered in arriving at a conclusion. I quote from a few of the leading cases both English and American. In the case of Burgess v. Burgess, 3 Deg. M. & G. 896, Lord Justice Turner said:

"No man can have any right to represent his goods as the goods of another person, but in applications of this kind it must be made out that the defendant is selling his own goods as the goods of another."

In the case of Reddaway v. Banham, A. C. 199, 13 R. P. C. 224, the Lord Chancellor said:

"My lords, I believe that this case turns upon a question of fact. The question of law is so constantly mixed up with the various questions of fact which arise on an inquiry of the character in which your lordships have been engaged, that it is sometimes difficult, when examining former decisions, to disentangle what is decided as fact and what is laid down as a principle of law. For myself, I believe the principle of law may be very plainly stated, and that is that nobody has any right to represent his goods as the goods of somebody else. How far the use of particular words, signs, or pictures does or does not come up to the proposition which I have enunciated in each particular case must always be a question of evidence, and the more simple the phraseology, the more like it is to a mere description of the article sold, the greater becomes the difficulty of proof, but if the proof establishes the fact, the legal consequence appears to follow."

In a later case in the House of Lords, referring to Burgess v. Burgess, the Lord Chancellor made this statement:

"The proposition of law is one which, I think, has been accepted by the highest judicial authority, and acted upon for a great number of years. It is that of Lord Justice Turner, who says, in terms: 'No man can have any right to represent his goods as the goods of another person. In the application of this kind, it must be made out that the defendant is selling his own goods as the goods of another.' That is the only question of law which, as it appears to me, can arise in these cases. All the rest are questions of fact. The most obvious way in which a man would be infringing the rule laid down

by Lord Justice Turner is if he were to say in terms, 'These are the goods manufactured by' a rival tradesman; and it seems to be assumed that, unless he says something equivalent to that, no action will lie. It appears to me that that is an entire delusion. By the course of trade, by the existence and technology of trade, and by the mode in which things are sold, a man may utter that same proposition, but in different words and without using the name of the rival tradesman at all. A familiar example, of course, is when, without using any name, by the identity of the form of the bottle or the form of the label, or the nature of the thing sold in the package, he is making the statement, not in express words, but in one of those different forms in which the statement can be made by something that he knows will be so understood by the public. In each case it comes to be a question whether or not there is the statement made; and, if the statement is made, there can be no doubt of the legal conclusion that he must be restrained from representing that the goods that he makes are the goods of the rival tradesman. Then you get back to the proposition which I have read from Lord Justice Turner." Powell v. Birmingham Vinegar Co., A. C. 710, 14 R. P. C. 727.

"In all cases where rights to the exclusive right of a trade-mark are invaded, it is invariably held that the essence of the wrong consists in the sale of the goods of one manufacturer or vendor as those of another, and that it is only when this false representation is directly or indirectly made that the party who appeals to a court of equity can have relief. This is the doctrine of all the authorities." Canal Co. v. Clark, 13 Wall. 311, 322 (20 L. Ed. 581).

"Equity gives relief in such a case, upon the ground that one man is not allowed to offer his goods for sale, representing them to be the manufacture of another trader in the same commodity. Suppose the latter has obtained celebrity in his manufacture, he is entitled to all the advantages of that celebrity, whether resulting from the greater demand for his goods or from the higher price the public are willing to give for the article, rather than for the goods of the other manufacturer, whose reputation is not so high as a manufacturer. Where, therefore, a party has been in the habit of stamping his goods with a particular mark or brand, so that the purchasers of his goods having that mark or brand know them to be of his manufacture, no other manufacturer has a right to adopt the same stamp, because, by doing so, he would be substantially representing the goods to be the manufacture of the person who first adopted the stamp, and so would or might be depriving him of the profit he might make by the sale of the goods which the purchaser intended to buy. Seixo v. Provezende Law Rep. 1 Ch. 195." McLean v. Fleming, 96 U. S. 245, 251 (24 L. Ed. 828).

"The first appropriator of a name or device pointing to his ownership, or which, by being associated with articles of trade, has acquired an understood reference to the originator, or manufacturer, of the articles, is injured whenever another adopts the same name or device for similar articles, because such adoption is in effect representing falsely that the productions of the latter are those of the former. Thus the custom and advantages to which the enterprise and skill of the first appropriator had given him a just right are abstracted for another's use, and this is done by deceiving the public, by inducing the public to purchase the goods and manufactures of one person, supposing them to be those of another. The trade-mark must therefore be distinctive in its original signification, pointing to the origin of the article, or it must have become such by association." Lawrence Mfg. Co. v. Tenn. Mfg. Co., 138 U. S. 537, 546, 11 Sup. Ct. 396, 400 (34 L. Ed. 997).

"Every one has the right to use his own name, but he may not lawfully apply it to the purpose of filching his property from another of the same name. The use of a geographical or descriptive term confers no better right to perpetrate a fraud than the use of any other expression. The principle of law is general, and without exception. It is that no one may so exercise his own rights as to inflict unnecessary injury upon his neighbor. It is that no one may lawfully palm off the goods of one manufacturer or dealer as those of another to the latter's injury. It prohibits the perpetration of such a fraud by the use of descriptive and geographical terms which are not sus-

ceptible of monopolization as trade-marks as effectually as it prohibits its commission by the use of any other expressions." Shaver v. Heller & Merz Co., 108 Fed. 821, 827, 48 C. C. A. 48, 55 (65 L. R. A. 878).

"No person other than the owner of a trade-mark has a right, without the consent of such owner, to use the same on like articles, because by so doing he would in substance, falsely represent to the public that his goods were of the manufacture or selection of the owner of the trade-mark, and thereby would or might deprive the latter of the profit he otherwise might make by the sale of the goods which the purchaser intended to buy. Where a trade-mark is infringed the essence of the wrong consists in the sale of the goods of one manufacturer or vendor as those of another, and it is on this ground that a court of equity protects trade-marks. It is not necessary that a trade-mark should, on its face, show the origin, manufacture, or ownership of the articles to which it is applied. It is sufficient that by association with such articles in trade it has acquired with the public an understood reference to such origin, etc. This doctrine has repeatedly been declared by the Supreme Court. Canal Co. v. Clark, 13 Wall. 311, 323 [20 L. Ed. 581]; Manufacturing Co. v. Trainer, 101 U. S. 51, 54 [25 L. Ed. 993]; Medicine Co. v. Wood, 108 U. S. 218, 223, 2 Sup. Ct. 436 [27 L. Ed. 706]; Menendez v. Holt, 128 U. S. 514, 9 Sup. Ct. 143 [32 L. Ed. 526]; Goodyear's India-Rubber Glove Mfg. Co. v. Goodyear Rubber Co., 128 U. S. 598, 603, 9 Sup. Ct. 166 [32 L. Ed. 535]; Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537, 546, 11 Sup. Ct. 396 [34 L. Ed. 997]; Mill Co. v. Alcorn, 150 U. S. 460, 462, 14 Sup. Ct. 151 [37 L. Ed. 1154]." Dennison v. Thomas (C. C.) 94 Fed. 651, 656.

[3] I think it has been established by the evidence in this case that the plaintiff is the owner of and alone entitled to use the trade-mark "Coca-Cola," and that its goods alone can lawfully be sold under that name.

It is insisted by the defendants that the words "Coca-Cola" are a mere description of a product, and that it does not describe the product of plaintiff, and consequently does not constitute a valid trade-mark. This contention was considered in the case of Coca-Cola Company v. Nashville Syrup Company, 215 Fed. 527, 132 C. C. A. 39, and was there decided adversely to such contention. I think that decision is decisive of the question.

The question of the validity of the trade-mark, "Coca-Cola," and the right of plaintiff to its exclusive use since its registration under the act of Congress of February 20, 1905, would seem to be placed beyond the pale of contention by the case of Coca-Cola Company v. Deacon Brown Bottling Company (D. C.) 200 Fed. 105.

I find as a matter of fact from the evidence that the defendant Koke Company of America was organized for the purpose of manufacturing and selling a syrup in imitation of that produced by the plaintiff, and that it aided the persons, to whom it sold its product, in the substitution of its product for that of plaintiff, that the name selected was chosen for the purpose of reaping the benefit of the advertising done by the plaintiff, and that the defendants, Koke Company of America and its predecessors, did not adopt or make use of the name "Koke" until the year 1909, and the use of said name by said defendants and its predecessors was not sufficient to create any right to its use as against the plaintiff. Parker v. Stebler, 177 Fed. 210, 101 C. C. A. 380 (9th Circuit); The Barbed Wire Patent, 143 U. S. 275, 12 Sup. Ct. 443, 36 L. Ed. 154; Deering v. Winona Harvester Works, 155 U. S. 286, 15 Sup. Ct. 118, 39 L. Ed. 153.

I am convinced that when the witness Mayfield adopted the name "Koke," he did so with the deliberate purpose of representing his goods to be the product and manufacture of the Coca-Cola Company. I further find that the purchase of the trade-mark "Koke" from the Murphressboro Bottling Works and from Bitting was made with a knowledge that same was being used to imitate plaintiff's product, and were acquired, not because they distinguished the product sold under such name, but because it would permit defendants to better dispose of their product as and for Coca-Cola, especially in view of the fact that the label of plaintiff was copied and imitated and the barrels in which its products were shipped were colored as nearly like those of plaintiff as possible.

It may be that these resemblances, standing alone, would not, in themselves, justify any relief against a person using them in good faith, but, when considered in the light of all the evidence in this case, I cannot reconcile them with fairness. The opinion of the Circuit Court of Appeals of the Sixth Circuit in Coca-Cola Company v. Gay-Ola Company, in 200 Fed. on page 723, 119 C. C. A. on page 167, contains a forcible comment on the state of facts here shown to exist:

"It is first to be observed that defendant is, at the best, on a narrow ground of legality. The name which it has adopted does not negative an intent to confuse. The product is identical, both in appearance and taste; and the form of script used in printing the 'trade-mark' names is the same. Even if the use of each of these items of similarity was lawful, when accompanied by good faith and no intent to deceive, they put the product near that dividing line where good or bad faith is the criterion, and their presence puts upon the user a burden of care to see that deception does not naturally result. Conversely, when we find, as a fact, from the other conduct of the defendant, that the underlying intent is to perpetrate a fraud upon the consumer, this intent must color the accompanying acts, and some which otherwise might be innocent become guilty. So here. The red color used by complainant on its barrels and kegs is not a color which it discovered, or to which it had any abstract monopoly; but this color has long been used by complainant in a way that was exclusive in this trade. No other manufacturer of analogous or competing drinks uses that color of package, and its adoption by defendant is one of the constituent parts of defendant's scheme of fraud. So, too, with defendant's failure to mark its packages with anything to indicate the place of manufacture. Ordinarily a man may mark his goods, or not, as he pleases; but when he has his marks and labels, which he uses on occasions, and can have no motive for sending out unmarked packages except to aid in a fraudulent substitution, the act, otherwise permissible, becomes forbidden."

The witness Wright of the Southern Koke Company justified the use of the name "Koke," for he says that the name "Koke" was adopted to take advantage of the demand for soft drinks in that name, and I conclude from the evidence in this case that the word "Dope" was adopted for the same purpose. I also find that the defendants' salesmen were instructed to sell, and did sell, both products as and for Coca-Cola. I find that both words are an abbreviation of the words "Coca-Cola" and are used by the public and by purchasers in designating the plaintiff's product, Coca-Cola.

A decree is ordered for complainant. Counsel will prepare and tender a decree in accordance with this opinion.