## R. L. BENNETT & SONS v. FARMERS' SEED & GIN CO.

(Circuit Court of Appeals, Fifth Circuit. March 27, 1923.)

No. 4035.

1. **Trade-marks and trade-names and unfair competition ⬅3(1)—Generic or descriptive names not entitled to protection.**

A generic name, or name descriptive of an article of trade, of its qualities, ingredients, or characteristics, cannot be employed as a trade-mark, and the exclusive use of it be entitled to protection.

2. **Trade-marks and trade-names and unfair competition ⬅85(1)—Misrepresentation as to production of new variety of cotton warrants denial of protection to alleged trade-name.**

Where plaintiffs claimed protection for the words "Bennett's," and "Bennett's New Cotton," and "Bennett's Cotton Seed," claiming to have propagated a new variety of cotton, they cannot, in infringement proceedings, claim that the commodity is really not a new variety, to avoid the rule that a generic name cannot be employed as a trade-mark, since their misrepresentation as to the production of a new variety would justify the court in denying them relief for that reason.

3. **Trade-marks and trade-names and unfair competition ⬅87—Plaintiffs estopped by acquiescence from claiming exclusive right to trade-name.**

Trade-marks may be lost by acquiescence in their use by others, and where plaintiffs sold cotton seed of considerable value, and accepted payment therefor with full knowledge and acquiescence that the seed would be used by the buyer in the cotton seed business, and the cotton grown therefrom and the cotton seed thereby produced would be advertised and sold as "Bennett's New Cotton," and the plaintiff assisted in the preparation of defendant's advertising matter, and advised as to new methods of ginning, plaintiffs were estopped from contending that the name "Bennett's New Cotton" was an exclusive trade-mark, which defendants were not permitted to use.

Appeal from the District Court of the United States for the Eastern District of Texas; W. Lee Estes, Judge.

Bill in equity by R. L. Bennett & Sons against the Farmers' Seed & Gin Company, to restrain infringement of trade-mark. Decree for defendant, and plaintiffs appeal. Affirmed.

John M. Spellman, of Dallas, Tex. (King, Mahaffey & Wheeler, of Texarkana, Tex., on the brief), for appellants.

Raymond H. Saal, of New Orleans, La., W. F. Moore, of Paris, Tex., and Emile Godchaux, of New Orleans, La. (Moore & Hardison, of Paris, Tex., and Milling, Godchaux, Saal & Milling, of New Orleans, La., on the brief), for appellee.

Before WALKER, BRYAN, and KING, Circuit Judges.

BRYAN, Circuit Judge. The appellants allege in their bill of complaint that they have the exclusive right to use the words "Bennett's,"

"Bennett's New Cotton," and "Bennett's Cotton Seed," to designate
the origin of cotton seed grown or produced by them for sale to the
public; that the word "Bennett's" was established as their trade-mark
and thereafter registered as such under the Act of Congress of Febru-
ary 20, 1905, 33 Stat. 724, as amended (Comp. St. §§ 9485-9516); and
that the appellee is infringing such trade-mark and the rights of ap-
pellants under it by advertising and selling cotton seed under the name
"the Bennett New Cotton." The bill prayed for a preliminary as well
as a permanent injunction.

The appellee filed its answer, in which it admitted the use of the
word "Bennett" in connection with the sale by it of cotton seed, but
defended its action in so doing by averring that that word was indica-
tive of a variety of cotton, and also that its use by the appellee had
been acquiesced in by the appellants. The District Court, after con-
sidering affidavits, exhibits, and interrogatories, and hearing testi-
mony of the parties at interest, entered an order refusing an applica-
tion for preliminary injunction. From that order this appeal is taken,
under section 129 of the Judicial Code (Comp. St. § 1121).

In 1908 the appellants began to breed and purify cotton seed, and
since 1913 or 1914 have been advertising such seed as "Bennett's Cot-
ton Seed," and the cotton produced therefrom as "Bennett's New Cot-
ton." In a circular distributed by them, under the caption "Why Call-
ed New Cotton," it is stated:

"In the first place, the cotton did not exist before I [Bennett] started it,"
and, after the method of cotton breeding is explained: "This is cotton
breeding and it has made Bennett's New Cotton the only cotton that has
every quality all growers and most spinners want."

In 1918, and perhaps earlier, the appellants sent samples of the
cotton grown by them to the Texas Agricultural experiment station,
where, in 1919 and 1920, it was listed as "Bennett" under the heading
"Variety Name," along with "Lone Star" and other varieties of cotton.
There is sufficient evidence to warrant the conclusion that "Bennett"
became well known as a variety of cotton. In the early spring of 1921
the appellee made known to the appellants that it was its purpose to
engage in the cotton seed business, and purchased from them several
thousand bushels and paid therefor the sum of $9,000.

The appellants edited and suggested changes in appellee's litera-
ture, furnished cuts, and assisted in the preparation of its advertising
matter, in which it was stated in conspicuous type that the appellee
would grow and sell the "Bennett New Cotton," and delivered to the
appellee for its use their form of contract with growers of cotton,
which also described the cotton and cotton seed in similar manner.
They also made recommendations as to how the cotton should be
ginned and machinery therefor arranged, so as to protect the cotton
seed and maintain its purity, which at much expense were adopted
in part by the appellee. At a later period in 1921 the appellants noti-
fied the appellee that they objected to the use of their name in connec-
tion with cotton or cotton seed produced or sold by it. Thereafter, in
September, 1921, the appellants registered their trade-mark.

[1] We are of opinion that the District Judge correctly refused the

preliminary injunction. In the leading case upon this subject of Canal Co. v. Clark, 13 Wall. 311, 20 L. Ed. 581, it is said:

"The office of a trade-mark is to point out distinctively the origin, or ownership of the article to which it is affixed; or, in other words, to give notice who was the producer. * * * No one can claim protection for the exclusive use of a trade-mark or trade-name which would practically give him a monopoly in the sale of any goods other than those produced or made by himself. If he could, the public would be injured rather than protected, for competition would be destroyed. Nor can a generic name, or a name descriptive of an article of trade, of its qualities, ingredients, or characteristics, be employed as a trade-mark and the exclusive use of it be entitled to legal protection."

See, also, Lawrence Mfg. Co. v. Tenn. Mfg. Co., 138 U. S. 537, 11 Sup. Ct. 396, 34 L. Ed. 997.

[2] It is now contended that there is no such variety of cotton as "Bennetts"; that appellants really propagate and sell cotton seed of the "Lone Star" variety, and that therefore the case does not fall within the rule, announced in Canal Co. v. Clark, supra, that a generic name cannot be employed as a trade-mark. The contention cannot meet with much favor in a court of equity. There was evidence sufficient to justify the court below in reaching the conclusion that the appellants represented to the public that they had propagated a new variety of cotton. If they have done that, they are not entitled to restrain the appellee from selling cotton seed of that variety. On the other hand, if they have not, they have misrepresented the fact, and the court was justified in denying them relief for that reason.

[3] We are of the opinion, also, that the appellants are estopped to deny to the appellee the right to sell cotton seed upon the representation that it was grown from the "Bennett New Cotton." Trademark rights may be lost by acquiescence. Hanover Milling Co. v. Metcalf, 240 U. S. 403, 419, 36 Sup. Ct. 357, 60 L. Ed. 713. It is undisputed that the appellants sold and accepted payment for seed of considerable value with full knowledge and acquiescence that they would and should be used exactly as they have been, and assisted in the preparation of the advertising matter of which they now complain. Of course, no additional rights to the trade-mark were acquired by registration under the act of Congress. It would require more than the showing made upon the application for preliminary injunction to entitle the appellants to the relief sought by them.

The decree of the District Court is affirmed.