## COCA–COLA CO. v. CARLISLE BOTTLING WORKS.
### No. 5367.

Circuit Court of Appeals, Sixth Circuit.
June 30, 1930.

Harold Hirsch, of Atlanta, Ga. (John A. Sibley and J. S. Botts, both of Lexington, Ky., on the brief), for appellant.

Leslie W. Morris, of Frankfort, Ky. (John P. McCartney, of Carlisle, Ky., and Marion Rider, of Frankfort, Ky., on the brief), for appellee.

Before MACK, MOORMAN, and HICKS, Circuit Judges.

HICKS, Circuit Judge.

■ Bill in equity by the Coca-Cola Company, manufacturer of a soft drink syrup and the beverage made therefrom called "Coca-Cola," against Carlisle Bottling Works, of Carlisle, Ky., a bottler and seller of a soft drink called "Roxa Kola," seeking to restrain defendant from infringing its trade-mark "Coca-Cola" by the use of defendant's trade-name "Roxa Kola," and from unfair competition by substituting and passing off defendant's product on calls for Coca-Cola. The evidence is insufficient to establish a case of substitution, similarity of dress, or "passing off," and we concur therefore in the conclusion of the District Judge that plaintiff is limited to the question whether its trade-mark is infringed. In determining this question the test is "whether the alleged infringing trade-mark or label, taken as a whole, so far resembles the other mark or label as to be likely to be mistaken for it by the casual or unwary purchaser." Western Oil Ref. Co. v. Jones, 27 F.(2d) 205, 206 (C. C. A. 6). Again, "a proper test is whether, taking into account the resemblances and differences, the former are so marked that the ordinary purchaser is likely to be deceived thereby." DeVoe Snuff Co. v. Wolff, 206 F. 420, 423 (C. C. A. 6).

At the outset we are confronted with three significant, though not controlling facts: (1) There is no evidence that any casual purchaser was ever deceived by defendant's trade-name; (2) there is no substantial evidence of any actual intent by defendant through its officers or agents to deceive by the use of its trade-name; and (3) that plaintiff's distributor, Mitchell, and defendant, had been operating in the same trade territory for more than eleven years before this suit was brought, and that during this entire period Mitchell knew, and we think plaintiff must have known, of the general use defendant was making of the trade-name "Roxa Kola." Since 1887 plaintiff by itself and through its predecessors has owned and appropriated to its products the registered trade-mark "Coca-Cola." The particular form in which the mark was registered was in script and as a hyphenated word, although the essential feature was "Coca-Cola." The name adopted by defendant originated about 1909 with one Wainscott, a manufacturer of syrups and soft drinks at Winchester, Ky. Wainscott appropriated it to his products.

His principal business was to sell soft drink syrups to bottlers. Defendant has been his customer since 1911. Wainscott, aided by the bottlers using his syrups, among whom was defendant, has used the name in intensive advertising over a limited territory in Kentucky and defendant has caused it to be blown into the bottles containing its product and also printed upon the bottle crowns. Defendant's word has never been hyphenated or printed in script, though this may not be material. Nashville Syrup Co. v. Coca-Cola Co., 215 F. 527, 530, Ann. Cas. 1915B, 358 (C. C. A. 6).

Considering each mark or name as consisting of two words, the last word in each has exactly the same sound, but "taken as a whole" the words do not sound alike. The "o" in Roxa is pronounced as "o" in "fox," while the "o" in Coca has the sound of "o" in "coke." In appearance the last three letters in the last word of each mark, to wit, "ola" are alike, and the second letter in the first words, "o," as well as the fourth and last letters in the first words, "a," are the same, but the first letter of each word of plaintiff's mark, "C," differs from the first letter of each word of defendant's mark or name, "R" and "K," and the difference is the more prominent because each letter is a capital.

■ Moreover, equity does not absolutely insure the consumers of plaintiff's beverage against deceit. It grants no relief unless the similarity between the two marks is of a character to deceive the casual consumer while exercising that caution ordinarily used in the purchase of such beverage. McLean v. Fleming, 96 U. S. 245, 251, 255, 24 L. Ed. 828; Kann v. Diamond Steel Co., 89 F. 706, 713 (C. C. A. 8). Such degree of care is usually low if not altogether negligible. The casual would-be purchaser of a 5-cent bottle of Coca-Cola makes little effort to determine whether its trade-mark or trade-name resembles the mental picture he retains of plaintiff's trade-mark. M. C. Peters Mill Co. v. Internat. Sug. Feed No. 2 Co., 262 F. 336, 338 (C. C. A. 6). But it does not follow that he could be easily imposed upon. It must be kept in mind that we are dealing with the trade-mark "Coca-Cola." As said by Judge Hollister in Coca-Cola v. Duberstein (D. C.) 249 F. 763: "The product was named 'Coca-Cola' at the beginning, and the beverage has been known under that name for more than 30 years. By the expenditure of millions of dollars in advertising it has become well known throughout the land. The name means, and is understood by the public to

mean, complainant's product." In Coca-Cola v. Koke Co., 254 U. S. 143, 145, 41 S. Ct. 113, 114, 65 L. Ed. 189, Justice Holmes said: "Since 1900 the sales have increased at a very great rate corresponding to a like increase in advertising. The name now characterizes a beverage to be had at almost any soda fountain. It means a single thing coming from a single source, and well known to the community. It hardly would be too much to say that the drink characterizes the name as much as the name the drink. In other words 'Coca-Cola' probably means to most persons the plaintiff's familiar product to be had everywhere rather than a compound of particular substances." See also Coca-Cola Co. v. Old Dominion Bev. Corp., 271 F. 600, 602 (C. C. A. 4). As tersely stated by Judge Cochran in his opinion in this case, 43 F.(2d) 114: "Its trade mark has been burned into the consciousness of people generally. Instinctively one recalls in memory its appearance and sound."

We conclude without hesitation that the ordinary consumer of Coca-Cola familiar with the mark would without reflection discover the dissimilarity of the two marks or names if substitution were attempted.

Reported cases are helpful only in so far as they lay down general rules of decision. The question of infringement must be determined upon the particular facts of the case in hand.

Plaintiff cites cases in which its application for an injunction against infringement was sustained. We do not regard them as controlling for reasons briefly stated. The first is Coca-Cola v. Koke Co., supra. The opinion of the District Court, 235 F. 408, and that of the Court of Appeals, 255 F. 894, disclose that the case involved the element of unfair competition, not here presented. In addition, the District Judge found that "Koke" was an abbreviation of "Coca-Cola." In Nashville Syrup Co. v. Coca-Cola Co., supra, the syrup company was enjoined from using the words, "Fletcher's Coca Cola," which was plaintiff's identical mark with the word "Fletcher's" added. Coca-Cola Co. v. Duberstein, supra, clearly involved unfair competition, as did the case of Coca-Cola Co. v. Old Dominion Bev. Corp., supra. In the Old Dominion Case the infringing word was "Taka-Cola." This word was harmful because it at least suggested the familiar beverage Coca-Cola, while the corresponding word in this case "Roxa," like the word "Dope" in the Koke Case, suggests nothing.

In Coca-Cola v. Chero-Cola Co., 51 App. D. C. 27, 273 F. 755, 756, the name Chero Cola was denied registration as a trade-mark because its similarity to Coca-Cola was likely to cause confusion.

Upon the above considerations we conclude that "Roxa Kola" does not infringe.

We also concur with the District Judge in sustaining the defense of acquiescence. On February 7, 1923, plaintiff, through its attorneys, wrote defendant and complained of unfair competition. Further correspondence followed, the burden of which was that plaintiff alleged and defendant denied both unfair competition and infringement. On March 6 defendant wrote Chas. W. Rainwater, at Atlanta, as a sort of intermediary. Myers, then defendant's secretary, thought that Rainwater, who was then or had been president of the American Bottlers' Association, was connected with plaintiff. In this he was mistaken, for Rainwater was secretary of the Coca-Cola Bottling Company, a distinct corporation, but it appears from the correspondence that Rainwater conferred with plaintiff's attorneys and on March 16 wrote defendant that the attorneys complained that defendant was guilty of and permitting unfair competition, in that both it and its dealers were substituting its product for Coca-Cola, and that if defendant could assure the attorneys that it would discontinue the practice and that it would use its efforts to discourage the dealers in so doing he felt that defendant would have no further difficulty. Some of the subsequent correspondence is missing, but enough is produced to convince us that defendant gave such assurances and in compliance therewith displayed prominently, not only in its own plant but in the stores of its dealers, signs reading in substance that, "We sell Roxa Kola only." Whereupon plaintiff remained silent until this suit, more than three years later, although its product was in active competition with defendant's product in the same territory during the whole of that period. See Swain v. Seamens, 9 Wall. 254, 19 L. Ed. 554; also R. L. Bennett & Sons v. Farmers' Seed & Gin Co., 288 F. 365 (C. C. A. 5). Its distributors certainly knew, and we think plaintiff, always actively zealous for the protection of its rights, must have known, of defendant's use of the trade-name "Roxa Kola" during the whole of this period and that they were content.

Both defenses having been sustained, the judgment of the District Court is affirmed.