**NOLL v. RINEX LABORATORIES CO. et al.**

No. 4962.

District Court, N. D. Ohio, E. D.
July 1, 1935.

WEST, District Judge.

Suit for infringement of trade mark. Plaintiff, who does business under the name Pinex Co. at Fort Wayne, Indiana, for over 25 years has made and sold a medicinal preparation for use in compounding a remedy for coughs and bronchial irritation, under the trade mark "Pinex". He acquired the mark in 1909 from one Schmidt, who had registered it for use on a "cough balsam" and re-registered it in 1929, in class 6, "Chemicals, medicines and pharmaceutical preparations". Plaintiff sells to wholesale drug houses by advertising for which he expends as much as $200,000 a year, and sales amount to over 1,000,000 bottles annually. The preparation is sold in 2½ oz. bottles which the user mixes with a syrup to produce a pint of the remedy. About 1933 he began making and selling nose drops under the same trade mark, put up in a box indicating they are made by Pinex Laboratories, which is said to be a department of the plaintiff's business. Sales of both products extend throughout the United States.

The Rinex Laboratories Co., located in Cleveland, Ohio, makes and sells a bottled package of capsules and tablets for asthma, nasal congestion and irritation of hay fever and colds under the name "Dr. Platt's Rinex Prescription" and a nasal medication for colds under the name "fed-Rinex". Attempt was made to register the former name by Clinical Laboratories Co., predecessor of defendant, but on the opposition of the plaintiff, registration was denied in 1926. Clinical Laboratories Co. went into bankruptcy in 1932, whereupon the defendant company was organized by some of those interested in the bankrupt concern, Mr. Frailey being president of both.

Defendant and its predecessor have sold the Rinex remedies in all parts of the United States, and by the expenditure of considerable sums in advertising, a very substantial business has been built up.

There is no evidence of wilful substitution of goods, and the evidence of actual confusion of buyers is meager and discloses nothing serious. Actual confusion would hardly be expected as between the cough remedies. Pinex is put up and sold in a yellow carton about twice the height of the one enclosing the Rinex bottle; it is a liquid used as the base of a compound and is not administered from the bottle, as are the Rinex capsules and tablets. The dress of the package, shape, size, and contents of the bottles are not similar. The same is true of the nasal remedy. Pinex nose drops are liquid and come in a bottle with a dropper attachment, while fed-Rinex is a thin jelly put up in a tube with a capped extension for insertion in the nostril. The enclosing cartons are dissimilar in appearance.

No fraudulent acts or purpose are established against the defendant, and as I see the matter, plaintiff's case depends upon its ability to prove trade mark infringement, without assistance from acts of unfair competition, except as defendant's use of a word so obviously similar to Pinex may constitute unfair competition.

Defendant claims, among other things, that plaintiff has been guilty of unfair practices in that it has made use of the name "Pinex Laboratories" on its nose drops, the desired inference being, I suppose, that it wished to imitate the "Laboratories" feature of defendant's name on its packages in order to prepare a better case of similarity between packages. There is no real foundation for this contention, and it is disregarded.

The absence of proof of actual confusion of goods and unfair competition is not fatal to plaintiff's claim of infringement of its technical registered mark. This is sufficiently shown by the following from Coca-Cola v. Carlisle Bottling Works, 6 Cir., 43 F.2d 119, 120: "The evidence is insufficient to establish a case of substitution, similarity of dress, or 'passing off,' and we concur therefore in the conclusion of the District Judge that plaintiff is limited to the question whether its trade-mark is infringed."

See, also, Gehle v. Hebe Co., 7 Cir., 276 F. 271.

Intent to deceive is not a requisite to infringement of a registered trade mark. Thaddeus Davids Co. v. Davids, 233 U.S. 461, 462, 34 S.Ct. 648, 58 L.Ed. 1046, Ann. Cas.1915B, 322. And an infringement of "Pinex" carries a presumption of fraud. Barton v. Rex-Oil Co., 3 Cir., 2 F.2d 402, 40 A.L.R. 424.

■ "The primary and proper function of a trademark is to identify the origin or ownership of an article to which it is affixed." Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 412, 36 S.Ct. 357, 360, 60 L.Ed. 713. Standard Oil Co. v. California Peach & Fig Growers, D.C., 28 F.2d 283, holds that Nujol and Nujol treated figs are offered for sale for the same human ailment, are sold side by side, are of the same general class, and that a common mark leads to a belief of common origin. And Judge Morris cites Duro Co. v. Duro Co., 3 Cir., 27 F.2d 339, Akron-Overland Tire Co. v. Willys-Overland Co., 3 Cir., 273 F. 674, and Aunt Jemima Mills Co. v. Rigney & Co., 2 Cir., 247 F. 407, L.R.A.1918C, 1039, to the same effect.

■ There can be no question but that the products involved here are of the same general class. Counsel for defendants say in his brief: "Although in the same general class, they are non-competing products." The court finds they are naturally and actually competitive. Not perhaps in every respect, but certainly in some respects.

■ Manufacturers of drugs, as the evidence shows, and as all know, often apply their marks on all their products of the same class, as indicating a common source. Plaintiff properly uses "Pinex" as his mark on both his cough remedy and his nasal inhalant.

Speaking of infringement, the Sixth Circuit Court of Appeals says, in Coca-Cola Co. v. Carlisle Bottling Works, 43 F.2d 119, supra, at page 120:

"In determining this question the test is 'whether the alleged infringing trademark or label, taken as a whole, so far resembles the other mark or label as to be likely to be mistaken for it by the casual or unwary purchaser.' Western Oil Ref. Co. v. Jones, 27 F.2d 205, 206 (C.C.A. 6). Again, 'a proper test is whether, taking into account the resemblances and differences, the former are so marked that the ordinary purchaser is likely to be deceived thereby.' DeVoe Snuff Co. v. Wolff, 206 F. 420, 423 (C.C.A. 6)."

While the decision of the Patent Office on defendant's attempt to register its trade mark is not conclusive, it certainly has much weight as the expression of officials constantly dealing with the subject. On appeal from the examiner of interferences the assistant commissioner said:

"The two words, 'Rinex' and 'Pinex', so nearly resemble each other both in appearance and sound as to be likely to cause confusion in the mind of the public, when the two words are appropriated to goods of the same descriptive properties. The only difference between the two words is in the first letter, the letter 'R' occurring in the one, and the letter 'P' occurring in the other. It is believed that the average purchaser would not carry this slight distinction in memory. As to meaning, the two words are arbitrary, hence have no authorized meaning. The different meanings that an analysis of the words might suggest, is a matter with which the average purchaser is but little concerned. The rule that the newcomer should observe a clear and well defined line between the mark which he selects and previously known marks should be applied in this case. (Coca-Cola Co. v. Chero-Cola Co., 51 App.D.C. 27, 273 F. 755.)

"With respect to the goods of the respective parties it must be held that they are of the same descriptive properties.

"The merchandise of each consists of a medicinal preparation for colds, asthma, etc. In fact, it seems clear from the record, that the preparation of each of the parties is intended as a remedy for inflammation or diseases, generally, of the respiratory organs, and is not to be confined in use to hay fever, asthma and head colds. Medicinal preparations for the same or kindred diseases have the same descriptive properties, within the purview of the trade-mark law, even though there may be specific differences in the character of the preparations, or in the form in which they are prepared for the market."

Defendant relies on Thomas Kerfoot & Co., Ltd. v. Louis K. Liggett Co., 1 Cir., 67 F.2d 214, and says the elements of plaintiff's mark "pin" and "ex" have long been public property. In the case cited, the element considered was "vap" and the entire words involved "Vapure" and "Vapex". Here the final syllable in each word is the same, "ex". In the Vapex case it was proven that "vap", the common syllable, had been many times registered for remedies either alone or as the first syllable of another word. There is no such proof here. Ex. 8 is a list of words registered, but "ex" is not found in any of them. Ex. 7 contains many names from the Druggist circular of 1924. Many end in "ex"; whether any are

242

such medicines as we have to do with is not known. And none appears to be registered. The defendant does not bring itself within the Vapex case.

■ The similarity in appearance and sound between "Pinex" and "Rinex" is so striking that the public is likely to be confused as to the origin of the goods of the same descriptive properties to which they are applied. "Rinex" being the dominant word in the defendant's mark, infringement is not avoided by the use of the small type words "Dr. Platt's" above and "prescription" below it. And on the nasal remedy "Rinex" completely dominates, and the hair-like "fed" above it must be ignored. This mark also infringes.

The "Rinex" remedy appeared on the market some ten or twelve years before this suit was commenced and application to register the trade mark was filed in April 1923. Plaintiff's opposition was heard on appeal in September 1926. While it was pending, Noll and Clinical Laboratories Co. discussed adjustment on the basis of a change in the name "Rinex". September 9, 1925 counsel for Noll was advised, Ex. J5, that this change would not be made.

The subject was resumed the next year, and Mr. Noll agreed to permit the change of "Rinex" to "Rinox", provided the mark across the last stroke of the R was eliminated. But this was not done, as it was found that "Rinox" was in use by another concern, The Laboratories Co. proposed "Rinux", "Ranex" and "Rinite", and Noll agreed to either of these save "Rinux"; then "Renex" was suggested, but Noll refused to consent, and the subject was dropped about the first of the year 1927.

When registration of "Rinex" was refused, on advice of counsel that this decision did not conclude the Laboratories Co.'s right to use the mark, it continued to do so and to advertise and sell as before. Mr. Frailey testified that since 1927, for seven years prior to suit, the plaintiff made no objection to the use of "Rinex" as a trade mark. Noll testified that he never authorized the use of the trade mark by the defendant or its predecessor. He explains some of the delay in bringing suit by the fact that the Clinical Laboratories went into bankruptcy in 1932 and he supposed the production of "Rinex" would not be continued, and did not know of the defendant's organization and resuming the business until the early part of 1934. The defendant registered "Fed-Rinex" in two forms in 1933 and 1934. This seems to have notified plaintiff that the new company's competition was serious and to have influenced commencement of the suit.

Defendant contends that, in the absence of actual fraud and substantial confusion of the buying public, it would be contrary to equity for an injunction to issue and thus destroy the value of its trade name and deprive it of the benefit of its advertising expenses incurred since it acquired the bankrupt business.

■ The court will hold that there has been sufficient delay to deprive plaintiff of any right to an accounting for past profits, but that the evidence is insufficient to show abandonment by plaintiff of its rights in its trade mark, or that any injustice will be done defendant by enjoining its future infringements.

Defendant argues that it had the right to presume from the negotiations mentioned that plaintiff's sole object was to protect its own registration, it not being concerned with possible injury to its trade through confusion.

True, protection of plaintiff's registration was the immediate object of its proceeding in opposition, but the court can not find this to be the final end sought. It was but a means to secure to plaintiff its rights under the trade mark. It would require very clear proof to justify the court in holding with defendant on that proposition. There is no intimation in the testimony on that subject or in any of the other evidence that plaintiff intended to abandon its right to use and protect its mark.

■ The period occupied by the contest in the Patent Office and subsequent negotiations over changing the name "Rinex" should be excluded. Defendants' counsel concedes this by the statement in the brief: "The negotiations between plaintiff and defendant relative to the change of defendant's mark ended in the first part of 1927 and from that time on the burden was clearly upon the plaintiff to assert, without unreasonable delay, any rights which he may have thought he had to prevent defendant from the continuing use of its trade-mark, Dr. Platt's Rinex Prescription."

The bill was filed June 2, 1934, and the delay, which covered the bankruptcy proceedings of the original company and organization of the defendant in 1932, was 7½ years.

While not controlling, it is proper to advert to the fact that the limitation in suits for equitable relief, G.C. § 11227, is ten years. The two-year limitation applicable in actions for injury to personal property, G.C. 11224-1, does not apply (Cincinnati St. Ry. Co. v. Whitehead, 39 Ohio App. 51, 176 N.E. 583), no tangible personalty being involved.

So far as the question of the effect of this delay in bringing suit is concerned, I rely on Layton Pure Food Co. v. Church & Dwight Co., 8 Cir., 182 F. 35, 32 L.R.A.,N. S., 274, a decision by Sanborn, J., concurred in by Judge, now Mr. Justice, Van Devanter. After denying complainant's right to damages, the court say, pages 41, 42:

"Neither the statute of limitations nor laches presents any defense to the prayer of the complainant for the prevention of future infringement. It is true that there are exceptional cases in which the owners of trade-marks have acquiesced in the use of them by the public or by competitors for such a length of time and under such circumstances that their action has been held to estop them from denying that they had abandoned their trade-marks and to constitute a bar to an application for an injunction against an infringement of them. French Republic v. Saratoga Vichy Spring Co., 191 U.S. 427, 437, 24 S.Ct. 145, 48 L. Ed. 247; Prince's Metallic Paint Co. v. Prince Mfg. Co., [3 Cir.], 57 F. 938, 943; Amoskeag Mfg. Co. v. Garner, 55 Barb. (N.Y.) 151. But the record in this case presents no facts which bring it within this class of cases. The complainant notified the predecessors of the defendant in 1898, and again in 1900, of its claim to this trademark for baking powder and requested them to cease its use. The defendant took its business and its rights with notice of and subject to that claim. There is no evidence that the complainant ever had the intention to abandon this claim except its delay for about nine years to commence its suit for the infringement, and that delay is insufficient to establish any intention to abandon it or to deprive it of its right to prevent further infringement. Fullwood v. Fullwood, 9 Chan.Decisions, 176. Repeated trespasses or infringements establish no right to continue to trespass or to infringe, and the defendant may not be permitted to continue to use the trade-mark of the complainant. McLean v. Fleming, 96 U.S. 245, 247, 258, 24 L.Ed. 828; Menendez v. Holt, 128 U.S. 514, 523, 9 S.Ct. 143, 32 L.Ed. 526."

The same court again reviewed the subject in Reid, Murdoch & Co. v. H. P. Coffee Co., 8 Cir., 48 F.2d 817, where, however, it was not claimed, as it is here, that the defendant had expended money to build up a good will in the infringing mark. I regard the former case as the clearest of the many that have been considered, and as quite sufficient authority.

On the question of laches, the case of Valvoline Oil Co. v. Havoline Oil Co., D. C., 211 F. 189, relied on by defendant, is obiter, see page 194. Further, defendant's mark in that case was not an obvious simulation of plaintiff's. See page 195.

Defendant itself is not in the best position to claim the protection of the court based on expenditures in carrying on its past activities. For in 1933, two interstate shipments of Dr. Platt's Rinex Prescription were seized and after due proceedings in the district courts of the Eastern District of Missouri and the Northern District of Illinois, were condemned and destroyed. The libels charged misbranding and false and fraudulent statements on the labels, etc. Abuse of public confidence in respect of a subject under state control will not support a claim of unclean hands in a federal court, at least when the offense is based on exaggerated claims for a medicine, Dr. Peter H. Fahrney & Sons Co. v. Ruminer, 7 Cir., 153 F. 735, 736; but these proceedings against the defendant were based on violations of the Federal Food and Drugs Act, 21 U.S.C.A. § 1 et seq., and stand on another basis. Defendant was aware of the proceedings and made no defense, and now thinks they "should not count", but offers no satisfactory reason for that position.

I think defendant's registered mark "Fed-Rinex", No. 305,011, does not infringe. In this mark "Rinex" does not dominate as it does in the "Fed-Rinex" mark later registered, No. 313,307. The mark consisting of the two words "Fed" and "Rinex" in very large type, set on an angle and bordered by equally heavy lines, neither looks nor sounds like "Pinex" and there is no reasonable likelihood of confusion between it and the single word "Pinex" in the mind of the public. See opinion of Judge Cochran in Coca-Cola Co. v. Carlisle Bottling Works, D.C., 43 F.2d 101, 110.

Plaintiff may take a decree enjoining defendants from further use of the marks "Dr. Platt's Rinex Prescription" and "fed-Rinex" registered No. 313,307, in both of

which the word "Rinex" dominates, but will be denied such relief as to the mark "Fed-Rinex", registered No. 305,011, and will also be denied an accounting. Defendants will pay the costs.