### SCOLDING LOCKS CORPORATION v. PLATE.

### No. 4968.

District Court, E. D. Michigan, S. D.

March 2, 1946.

Barnes, Kisselle, Laughlin & Raisch, of Detroit, Mich., and Young, Young & Wright, of Milwaukee, Wis., for plaintiff.

Whittemore, Hulbert & Belknap, of Detroit, Mich., for defendant.

LEDERLE, District Judge.

1. Plaintiff, a Wisconsin corporation, and its predecessors in title have for many years been engaged in the manufacture and sale of hairpins and a modern variation called "Bob Pins." Defendant, doing business as Curly Lox Products, is a citizen of Michigan and a resident of this district. For many years he has been engaged in the manufacture and sale of non-electrical hair curlers and other products used in the ladies hairdressing art under the assumed name of Curly Lox Products.

2. The products of both parties have been widely advertised and sold throughout the United States.

3. Prior to June 6, 1933 the defendant commenced the sale of non-electrical curlers under the trade-mark "Curly Lox", and on that date registered the trade-mark in the patent office under Class 40 for "Fancy Goods, Furnishings and Notions." The defendant has continuously used the trade-mark "Curly Lox" since 1933, and early in 1943, when he started to manufacture and sell hair snaps, he used this trade-mark in connection therewith. On February 20, 1945, he again registered the trade-mark in Class 40 for specific use in connection with such products.

4. On or about September 20, 1934, plaintiff adopted the trade-mark "Scoldy Lox" for hair pins and bob pins sold by it but never applied for Federal trade-mark registration thereof. Plaintiff's predecessor in title obtained the registration for "Scolding Locks" for hair pins on December 3, 1918, and on January 9, 1940, the registration was renewed under date of December 3, 1938. It did not oppose the issuance of either of the Federal registrations for defendant's "Curly Lox" trade-mark and the patent office did not cite the trade-mark registration for "Scolding Locks" against either of defendant's trade-mark applications for "Curly Lox." Plaintiff has not instituted

cancellation proceedings against either of the defendant's Federal registrations for "Curly Lox" because of any alleged similarity between "Curly Lox" and "Scolding Locks" or "Scoldy Lox."

5. The goods marketed under the respective trade-marks of the parties are all of the same descriptive properties and are sold through the same channels and to the same or similar customers. The hair snaps and hair bows marketed by the defendant under the trade-mark "Curly Lox" since 1943 are used for the same purposes as hair pins and bob pins. There is no evidence that any purchaser was actually misled by the alleged similarity between the trade-marks "Curly Lox" and "Scolding Lox." Neither of the parties' trade-marks are attached directly to the product but are upon the display cards upon which the products are mounted and displayed for sale. The display cards of the plaintiff and the defendant received in evidence are all so dissimilar that no confusion could possibly arise from this source. There is no evidence that the defendant ever attempted to copy the dress of any of these display cards, or any of the plaintiff's advertising, either as to style, color, shape, size or in any other particular.

6. Unless the trade-marks themselves, that is "Scolding Locks", "Scoldy Lox" and "Curly Lox", can be held to be confusingly similar, there is no trade-mark infringement or unfair competition. Both trade-marks are a combination of well-known words. The term "Curly Locks", correctly spelled, is defined in Webster's New International Dictionary as "one having curly hair." "Scoldy" is not defined in the dictionary but it is the plaintiff's claim that it is suggestive of unruly hair. One of the definitions for the noun "Locks" is "the hair of the head." The term "Locks", or phonetically spelled "Lox", has been adopted many times by others as the last word of a trade-mark in connection with the different first word for articles which have the same descriptive properties as those involved in this case. It is conceded by the plaintiff that it has no exclusive right to use the word "Locks" or its abbreviated spelling "Lox" and it is only because of the combination of this word with the word "Curly" that it claims the confusion results. There is no possibility that the casual or unwary purchaser would likely be mistaken and confuse "Curly" with either "Scolding" or Scoldy." The

words are spelled differently, are pronounced differently and are not at all similar in appearance. Taken as a whole, the trade-marks appearing on the display cards are strikingly dissimilar.

7. There is no evidence that defendant at any time attempted to substitute or pass off his product for that of the plaintiff.

8. Prior to filing this complaint the officers of the plaintiff were on very friendly terms with the defendant and transacted considerable business with him. The complaint charges the defendant with unfair competition and trade-mark infringement. No evidence was offered to support the charge of unfair competition other than that directly connected with the alleged trade-mark infringement. With the knowledge and acquiescence of the plaintiff, the defendant used his registered trade-mark in connection with goods of the same descriptive properties of those of the plaintiff for many years prior to the filing of this complaint and there is no evidence that any purchaser was ever misled into the belief that the plaintiff was the source of such products. There is no reason to believe that purchasers will be any more confused as to the source of the bob pins sold under this trade-mark. In March, 1943, the defendant notified the President of the plaintiff that he intended to market a new hair snap and market it under the trade-mark "Curly Lox" and it was not until approximately a year later and after the defendant had spent a large sum of money advertising this product that the plaintiff complained of the trade-mark infringement. It is unnecessary to decide whether the conduct of the plaintiff's officers would sustain a defense to this action in accordance with the doctrine set forth in Coco-Cola Co. v. Carlisle Bottling Works, 6 Cir., 43 F.2d 119, for the reason that it is perfectly clear there is no infringement. However, it is evident that plaintiff's President did not believe that the two trade-marks were confusingly similar in March, 1943, and both trade-marks had been used many years prior thereto to identify goods of the same descriptive properties.

## Conclusions of Law

■ 1. This court has jurisdiction of this case both by reason of diversity of citizenship and amount involved and because it is an action arising under the trade-mark laws of the United States. 28 U.S.C.A. § 41(1) and (7).

2. The plaintiff has failed to prove that the defendant is guilty of any acts of unfair competition unless he is guilty of trade-mark infringement.

3. It makes no difference whether the respective trade-marks are considered as suggestive or descriptive or arbitrary and fanciful for they are clearly distinguishable. There is no evidence that the defendant ever attempted to palm off his goods as those of the plaintiff or attempted to take advantage of its reputation. The most casual consumer could not be deceived by any alleged similarity of the two trade-marks. Cola Cola Co. v. Carlisle Bottling Works, 6 Cir., 43 F.2d 119; Dixi-Cola Laboratories Inc. v. Coca-Cola Co., 4 Cir., 117 F.2d 352.

4. In his answer defendant requested that the plaintiff be enjoined from prosecuting or threatening to prosecute against defendant, his agents, vendees and others in privity with him, any action of any kind in which it asserts that the use of defendant's trade-mark on hair snaps is unfair to plaintiff or is an infringement of its alleged trade-marks.

Assuming without deciding that such relief could be granted in this case, there is no apparent reason for doing so. There is nothing to indicate that plaintiff will not abide by the final decision of the courts as to its rights and there is no reason for the issuance of an injunction at this time.

5. A judgment dismissing the complaint with costs to be taxed in favor of the defendant is being entered simultaneously herewith.