### ARMOUR & CO. v. LOUISVILLE PROVISION CO.

(District Court, W. D. Kentucky. January 22, 1921.)

No. 52.

1. Trade-marks and trade-names and unfair competition ⊂⇒3 (1)—Star cannot be appropriated as trade-mark.

   The word "star," or the symbol of a star, cannot alone be appropriated as a trade-mark, since it does not in any way indicate the origin of the goods.

2. Trade-marks and trade-names and unfair competition ⊂⇒3 (1)—Mere word cannot be appropriated, unless it indicates origin or has acquired secondary meaning.

   A mere word cannot be appropriated by an individual or corporation, as a trade-mark, unless in itself it indicates the origin of the goods marked thereby, or has by use acquired an exclusively secondary meaning.

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. **Trade-marks and trade-names and unfair competition** ⟜75—**Actual deception of buyers essential to proof of unfair competition.**

In a suit to restrain unfair competition, where there was no infringement of a trade-mark, the proof must establish that there was actual deception of the buyers by the defendant, in passing off its goods as those of plaintiff.

4. **Trade-marks and trade-names and unfair competition** ⟜70(1)—**Sales under distinctive mark held not unfair competition.**

Sales by defendant under a distinctive trade-mark, though it included a word which was claimed by plaintiff as its trade-mark, do not establish unfair competition, where there was no proof purchasers were deceived thereby, or of any attempts to deceive purchasers, except occasional attempts by tricky retailers.

In Equity. Suit by Armour & Co., a corporation, against the Louisville Provision Company to restrain infringement of the trade-mark and unfair competition. Bill dismissed.

Helm Bruce and Bruce & Bullitt, all of Louisville, Ky., and A. B. Stratton and Offield, Towle, Graves & Offield, all of Chicago, Ill., for plaintiff.

Humphrey, Crawford, Middleton & Humphrey, of Louisville, Ky., for defendant.

WALTER EVANS, District Judge. The bill of complaint was filed August 21, 1918. It alleges that the plaintiff, Armour & Co., and the partnership of the same name, which it succeeded, has, since 1871, been engaged in the business of preparing, putting up, and packing meat products, including hams and bacon, at Chicago, Ill., and elsewhere in the United States, and selling and distributing such meat products through its various agencies in Chicago and elsewhere throughout the United States, and particularly throughout the state of Kentucky and the Western district thereof.

It is further alleged that about the year 1877 the partnership styled Armour & Co., in good faith and without knowledge of any prior rights, had adopted as their trade-mark the symbol of a star, and also as an alternative the word "Star," and that thereafter Armour & Co. used that trade-mark continuously upon hams and bacon of high quality throughout the United States, until that partnership was succeeded by the plaintiff corporation, and it avers that that trade-mark, as associated with hams and bacon, was well known as the trade-mark of the plaintiff and its predecessor. Plaintiff further avers that, by virtue of its acquiring the going business, good will, assets, and trade-marks known as the "Armour Star," it is the sole and exclusive owner of said trade-mark, namely, the symbol of a star and the alternative thereof, the word "Star" as applied to hams and bacon, and that it has extensively exploited and advertised the same throughout the country, including the state of Kentucky. It also avers that said "Star" trade-mark has always been used upon hams and bacon of the choicest selection, and that such hams and bacon are of the highest grades, and that the "Star" trade-mark and the good will appurtenant thereto are of great value to the plaintiff.

⟜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

It is then averred that the defendant corporation was organized in 1910, and went into the business of preparing, packing, and selling meat products, and became a competitor of the plaintiff; that it had at the time of its organization notice and was well acquainted with the trade-marks and brands of the plaintiff used upon its meat products, but that nevertheless it adopted as its trade-mark for hams and bacon and certain other products the symbol of a star associated with the word "Southern," and adopted as the alternative of that trade-mark the word "Star," also associated with the word "Southern," and that the use of this trade-mark was largely unaccompanied by the name of the defendant.

The plaintiff then avers that the trade-mark "Southern Star," adopted and used by defendant, is a palpable infringement of the "Star" trade-mark of the plaintiff, and had been since the year 1913; that such infringement continued up to the time of the filing of the bill, and that the sale of the meats with this brand thereon had been very large throughout the state of Kentucky, to the great damage of the plaintiff. The bill also alleges that the defendant had made application for the registration, as a trade-mark, of the word "Southern" in connection with the "Star," but that such registration had been refused by the Patent Office.

Many details were stated in the bill, which it is unnecessary to repeat here, with the result that the plaintiff claims that its trade-mark has been infringed by the defendant, to the great injury of the plaintiff, and also that the conduct of the defendant has been unfairly competitive and fraudulent as to the plaintiff's rights in its trade-mark and greatly to its injury. It is thereupon insisted that the plaintiff is entitled to an injunction against the use by the defendant of its trade-mark, and that the plaintiff has been damaged to the extent of $1,000,000.

The defendant in its answer, after admitting certain averments of the bill, puts in issue all its other statements. Especially does it do this, first, as to plaintiff's claim to the right to appropriate for its exclusive use as a brand or trade-mark the word "star," or any symbol thereof; second, as to the averments that the defendant had in any way used the brand "Southern Star" with any purpose or design to deceive or impose upon the public, or any purchaser or user thereof, or that in fact any purchaser or user thereof had in any way been deceived by anything done by defendant; and, third, in respect to the averments that defendant had ever been guilty of any infringement upon plaintiff's rights, or had been guilty of any sort of unfair competition in respect thereto. On the contrary, defendant avers that during all its existence it had only used upon its products the plainly distinguishable words "Southern Star."

Much testimony was heard at the trial of the issues involved, and the arguments of counsel thereon were elaborate and able, showing careful study and much research. Nevertheless for obvious reasons we think we need not deal at all elaborately with those issues, nor with the testimony heard upon the respective sides. We shall therefore

state (a) our conclusions generally on the issues of fact, and (b) our conclusions, equally general, on the questions of law.

## The Facts.

First. We find the fact certainly to be that Armour & Co., alike while it was a partnership and since it transmuted that partnership into the present corporation, has used continuously and very extensively for at least 45 years and throughout the entire country, including Kentucky, the word "Star" in connection with the words "Armour & Co.," or the word "Armour," and also an emblem of a star in connection with those words upon vast quantities of its best hams and bacons. We attach at this point specimens of those marks which are now of special importance, namely:

[That part of the label here printed in black was blue in the original; white background in the oval as here shown was yellow ochre in the original.]

Second. That since 1910 the defendant in the state of Kentucky, with full knowledge of the use by the plaintiff of its words and emblem in that connection, as above explained, has itself used the word "Star" in connection with the word "Southern," and to the extent of about 15 per cent. in connection also with the words "Louisville Provision Company," upon its hams, bacon, and meats prepared in Louisville, Ky., and sold throughout that state. In combination therewith it also used an emblem of a star. We now attach hereto copies of such of the marks and brands used by the defendant as appear to be material, viz.:

[The red of the original label shown just above is here printed in dark cross-shading; the narrow light inner band and the words "Louisville, Ky.," were yellow in the original label.]

U. S. INSPECTED AND PASSED BY DEPARTMENT OF AGRICULTURE
ESTABLISHMENT No. 995
PATERSON P.P.CO., PASSAIC, N.J

[On the above label the words "Southern Star Brand" and "Ham" were printed in red (here shown white) and black. A red square appeared in each corner of the upper rectangle, here shown white. The narrow white borders here shown around the rectangle, the oval, and in the lower part of the cut were red in the label. Small white designs in the spaces around the oval as here shown were red in the label.]

Third. We also find that Joseph M. Emmart, one of the organizers of the defendant company, was, at the time of its organization, well acquainted with plaintiff's brands and the use thereof.

Fourth. We find that the defendant corporation was organized in Louisville in 1910, and that soon afterwards it begun the use, on bacon

275 F.—7

and hams, of the brands, samples of which we have already put in this opinion; that the plaintiff promptly acquired full information respecting those brands and defendant's use thereof; that this action was brought August 21, 1918, but that notwithstanding these facts the testimony heard in plaintiff's behalf does not satisfactorily, and without mere inference or hearsay, show that any purchaser whatever, either for his own use or for sale to others, has been deceived into the use of any of defendant's hams or bacon, or into any purchase thereof, as those of the plaintiff, instead of those of the defendant. On the contrary, the fact that no person of ordinary intelligence was at all likely to be so deceived by defendant's brands and marks was shown clearly by the testimony of so many witnesses that further testimony on that phase of the case was stopped by the court when quite a score of other witnesses were present ready to testify for defendant to the same effect.

In the almost entire absence of any convincing testimony from the plaintiff on this point, the court thought further testimony thereon by the defendant was unnecessary. In saying this, the court does not by any means overlook the testimony of the witnesses for the plaintiff. Quite the reverse, for we have reached these conclusions after a careful study of every part of that testimony, and especially as it bears upon the question of infringement and unfair competition. Six or more of the present or former employees of the plaintiff testified in its behalf as to "confusion" resulting from the defendant's brands. They had been sent to search for it, but, without excluding those parts of it which can fairly be termed hearsay, there is nothing of importance developed as affecting the defendant, though "tricky retailers" (Rathbone, Sard & Co. v. Champion Steel Range Co., 189 Fed. 33, 110 C. C. A. 596, 37 L. R. A. [N. S.] 258) may have been discovered. Other testimony of the plaintiff was also heard, much of which was obviously hearsay; but, remarkable as it may seem, after the lapse of so many years, not one purchaser from either party to this suit testified that he had been in any way deceived or imposed upon by defendant's brands as being those of the plaintiff.

Certainly, taking together all the testimony of all plaintiff's witnesses, it does not, in our opinion, when fairly considered, in any way meet the demands of the onus resting upon the plaintiff, especially in view of the explicit testimony of witnesses for the defendant and of the applicable rules of law so frequently announced by the Circuit Court of Appeals of this circuit in cases presently to be cited. Consequently we find that in Kentucky, and especially in this district thereof, the public have not at any time since defendant began its business been deceived into the purchase or acquisition of defendant's products as those of the plaintiff by the use by defendant of its own brand or otherwise.

Fifth. The plaintiff does not seem to the court to have shown, even prima facie, that any such general or specific damages have come to it from anything done by the defendant, or for which the latter could fairly be held responsible, as should entitle the plaintiff to an account-

ing for damages in the premises in respect to a trade-mark. And indeed we rather think that nothing now is really insisted upon by the plaintiff, except an injunction to prevent any unfair competition with it by the defendant.

## The Trade-Mark.

The plaintiff in its bill frequently describes its trade-mark. It especially avers that in or about the year 1877 its predecessor in name (the partnership of Armour & Co.) in good faith, and without the knowledge of any prior rights or use that might conflict therewith, adopted as their trade-mark for hams and bacon the symbol of a "star," and also adopted as an alternative for that symbol the word "star." It shows that it, as a corporation, acquired and succeeded to all the rights of the partnership in that trade-mark, and throughout the bill the description of a trademark is always made in the same terms, so that there can be no doubt that the plaintiff's trade-mark, as claimed and asserted by it, is the symbol of a star and as an alternative the word "star." It is indeed, at least negatively, made altogether clear that the words "Armour's Star" in no way constitute the trade-mark claimed by the plaintiff. And there may be some point in this, inasmuch as possibly it could not well be that the use of the brand "Southern Star" would infringe upon the use of one plainly called "Armour's Star."

[1] The symbol of the star and alternatively the word "star" being the one trade-mark claimed by the plaintiff, the question arises whether either the symbol of a star or the word "star" can be appropriated for trade-mark purposes by any single individual. It is somewhat remarkable that many questions pertaining to trade-marks have been treated so variously and with so many distinctions by the courts throughout our broad country that at times it is extremely difficult for the lower courts to determine what is to be regarded as settled. This situation confronts us now in respect to the claim of the right to the exclusive appropriation in its own trade by one corporation of the word "star," one of the oldest words in human language (Genesis, chapter 1, verse 16), and of its counterpart, the emblem of a "star." So intimately connected, indeed, are a star and an emblem or picture thereof that we shall consider both as subject to the same rules of law.

Applicable or at least somewhat illustrative cases are very numerous, and it would seem to be useless for a court of first instance to go extensively into a study or analysis of many of them. We shall therefore confine ourselves to a few cases which appear to be directly in point. The first of these is Galena-Signal Oil Co. v. W. P. Fuller & Co. (C. C.) 142 Fed. 1002, 1007. It decided the very point involved here, and clearly states the reasons therefor. We think those reasons are sound and should be controlling. On page 1007 of the report, Morrow, Circuit Judge, said:

"The action is limited to the charge that the defendant has infringed a technical trade-mark in violation of a right of property wherein the fraudulent intent is presumed. The object of the suit is to restrain a further violation of the alleged right of property. Elgin Nat. Watch Co. v. Illinois Watch Co., 179 U. S. 665, 674, 21 Sup. Ct. 270, 45 L. Ed. 365. This issue

makes it necessary to consider the nature of a trade-mark. What is it? It has been determined that to acquire the right to the exclusive use of a name, device, or symbol as a trade-mark, it must appear that it was adopted for the purpose of identifying the origin or ownership of the article to which it is attached, or that such trade-mark must point distinctly, either by itself or by association, to the origin, manufacture, or ownership of the article on which it is stamped It must be designed, as its primary object and purpose, to indicate the owner or producer of the commodity, and to distinguish it from like articles manufactured by others. Columbia Mill Co. v. Alcorn, 150 U. S. 460, 463, 14 Sup. Ct. 151, 37 L. Ed. 1144. It is manifest that the symbol or representation of a star cannot by its own meaning indicate the origin or ownership of such an article as oil. It can only, then, be by association that its origin or ownership can be so indicated. But the representation of a star is a familiar symbol, and can be found in every character of business and associated with all kinds of products and goods. Standing alone, it is not sufficiently distinctive to answer the requirements of a trade-mark, for the reason that it has been adopted by many manufacturers and producers for all kinds of articles. It can be found all through the Patent Office Gazette, but always in connection with some other mark or device to indicate origin or ownership. The symbol or device which one is at liberty to affix to a product of his own manufacture as a trade-mark must be one not previously appropriated, and which will distinguish the article from one of the same general nature manufactured or sold by others. Manufacturing Co. v. Trainer, 101 U. S. 51, 54, 25 L. Ed. 993."

Had the plaintiff adopted for its trade-mark the words "Armour's Star," they might possibly have so indicated origin as to make it valid, but not so the word "star" or the symbol of a "star" standing alone, for it seems to be well settled that a word in common use, and which does not of itself indicate origin, cannot be exclusively appropriated by any one as a trade-mark. And especially would this be true of a word which, like "star," may simply indicate a high grade or quality of the article upon which it is used—the word "star" in that connection very appropriately indicating excellence or high quality, and being, therefore, descriptive of the article.

In Elgin National Watch Co. v. Illinois Watch Co., 179 U. S. 673, 21 Sup. Ct. 273, 45 L. Ed. 365, it was said of a trade-mark that—

"It may consist in any symbol or in any form of words, but, as its office is to point out distinctively the origin or ownership of the article to which it is affixed, it follows that no sign or form of words can be appropriated as a valid trade-mark, which from the nature of the fact conveyed by its primary meaning, others may employ with equal truth, and with equal right, for the same purpose."

This view was very distinctly reaffirmed in Standard Paint Co. v. Trinidad, etc., Co., 220 U. S. 446, 453, 31 Sup. Ct. 456, 457, 55 L. Ed. 536, as was also the proposition clearly announced in Canal Co. v. Clark, 13 Wall. 311, 20 L. Ed. 581, where it was held that—

"A trade-mark must therefore be distinctive in its original signification, pointing to the origin of the article, or it must have become so by association."

In Kellogg, etc., Co. v. Quaker Oats Co., 235 Fed. 657, 149 C. C. A. 77, the Circuit Court of Appeals (Sixth Circuit) held that—

"A descriptive term, which does not indicate the origin of an article, is not the subject of a technical trade-mark."

And it may be remarked in respect to the instant case that the testimony heard was not sufficient to show that there had been established in the public mind a secondary meaning of the word "star."

In American Tobacco Co. v. Globe Tobacco Co. (C. C.) 193 Fed. 1015, it was held that the word "Union" cannot be appropriated as a trade-mark. A similar ruling upon the word "Keepclean" was made in Florence Manufacturing Co. v. J. C. Dowd & Co., 178 Fed. 73, 101 C. C. A. 565; the court holding that this union of the two words was altogether descriptive.

In Greene, etc., Co. v. Manufacturers' Co. (C. C.) 158 Fed. 640, the word "stud" was held not to be the subject of appropriation as a trademark, and in Hygienic Co. v. Way, 137 Fed. 592, 70 C. C. A. 553, it was held that the word "muffler" could not be the subject of a trademark. Many other cases of the same character might be cited.

[2] These citations would seem satisfactorily to show that no mere word, unless it, per se, indicates the origin of the merchandise or other property upon which it is placed, or has by use acquired an exclusively secondary meaning, can be appropriated as a trade-mark thereon. This would seem to be all that need be said in this connection, but as possibly illustrative of the applicable reasoning we may cite a few cases where geographical names or the names of localities were unsuccessfully attempted to be established as trade-marks.

In Columbia Mill Co. v. Alcorn, 150 U. S. at pages 464, 465, 14 Sup. Ct. 152, 37 L. Ed. 1144, speaking through Mr. Justice Jackson, the Supreme Court said:

"Second. The word 'Columbia' is not the subject of exclusive appropriation under the general rule that the word or words, in common use as designating locality, or section of a country, cannot be appropriated by any one as his exclusive trade-mark. In Canal Co. v. Clark, 13 Wall. 311, 321, it was held that the word 'Lackawanna,' which is the name of a region of country in Pennsylvania, could not be, in combination with the word 'coal,' constituted a trade-mark, because every one who mined coal in the valley of Lackawanna had a right to represent his coal as Lackawanna coal. Speaking for the court, Mr. Justice Strong said: 'The word "Lackawanna" was not devised by the complainants. They found it a settled and known appellative of the district in which their coal deposits and those of others were situated. At the time they began to use it, it was a recognized description of a region, and of course of the earths or minerals in the region. * * * It must be then considered as sound doctrine that no one can apply the name of a district of country to a well-known article of commerce, and obtain thereby such an exclusive right to the application as to prevent others inhabiting the district, or dealing in similar articles coming from the district, from truthfully using the same designation.' In Koehler v. Sanders, 122 N. Y. 65, it was held that the word 'international' could not be exclusively appropriated by any one as a part of a trade-name, because the word was a generic term in common use, and in its nature descriptive of a business to which it pertains, rather than to the origin or proprietorship of the article to which it might be attached. In Connell v. Reed, 128 Mass. 477, it was held that the words 'East Indian,' in connection with 'Remedy,' placed upon bottles of medicine, were not the subject of a trade-mark. In that case Mr. Chief Justice Gray, speaking for the court, said 'that it was at least doubtful whether words in common use as designating a vast region of country and its products can be appropriated by any one as his exclusive trade-mark, separately from his own, or some other name, in which he has a peculiar right.'"

See, also, the interesting opinion in Apollo Bros. v. Perkins, 207 Fed. 530, 125 C. C. A. 192, in which it was held that the geographical name of "Nubia" could not be the subject of a trade-mark. In its opinion in that case (207 Fed. 533, 125 C. C. A. 195) the court said:

"The policy of the law is to foster and not to hamper competition, and it only permits a monopoly in the use of a trade-mark when it has become the absolute and exclusive property of the first user—good against the world. A geographical name can never become such property, and the utmost the first user can insist is that no one else shall so use it as to constitute unfair competition."

## Unfair Competition.

We have found it impossible to escape the conclusion that the testimony heard is not sufficient to support plaintiff's claim to a valid trade-mark; but that fact, of itself, does not bar its claim based on the assertion that the defendant has been guilty of unfair competition in connection with plaintiff's brands on hams and bacon. We are thus brought to the consideration of the remaining and probably the most important of the claims asserted in this action.

[3] In Rathbone, Sard & Co. v. Champion Steel Range Co., 189 Fed. 30, 31, 110 C. C. A. 600, 37 L. R. A. (N. S.) 258, the Circuit Court of Appeals of this Circuit, speaking through Judge Knappen, said in its opinion:

"The rule is well settled that nothing less than conduct tending to pass off one man's merchandise or business as that of another will constitute unfair competition. In Goodyear Co. v. Goodyear Rubber Co., 128 U. S. 598, 604, 9 Sup. Ct. 166, 168, 32 L. Ed. 535, Justice Field said: 'The case at bar cannot be sustained as one to restrain unfair trade. Relief in such cases is granted only where the defendant, by his marks, signs, labels, or in other ways, represents to the public that the goods sold by him are those manufactured or produced by the plaintiff, thus palming off his goods for those of a different manufacturer, to the injury of the plaintiff. McLean v. Fleming, 96 U. S. 245' (24 L. Ed. 828); Sawyer v. Horn (C. C.) 4 Hughes, 239 (1 Fed. 24); Perry v. Trufitt, 6 Beav. 66; Croft v. Day, 7 Beav. 84.' In Howe Scale Co. v. Wykcoff, Seamans & Benedict, 198 U S. 118, 140, 25 Sup. Ct. 609, 614, 49 L. Ed. 972, Chief Justice Fuller said: 'The essence of the wrong in unfair competition consists in the sale of the goods of one manufacturer or vendor for those of another, and, if defendant so conducts its business as not to palm off its goods as those of complainant, the action fails.' In American Washboard Co. v. Saginaw Mfg. Co., 103 Fed. 281, 43 C. C. A. 233, 50 L. R. A. 609, it was held by this court in an opinion by Judge (now Mr. Justice) Day that the fact even that the defendant deceives the public as to his goods by fraudulent means does not give a right of action unless it results in the sale of such goods as those of the complainant."

Since that case was decided, the same court in many other cases has reasserted the proposition there announced. Notably this was so in Edward Hilker Mop Co. v. United States Mop Co., 191 Fed. 613, where, on page 618, 112 C. C. A. 176, 181, it said:

"The rule is well settled that nothing less than conduct tending to pass off one man's business or merchandise as that of another will constitute unfair competition."

Upon this proposition many cases were cited.

In De Voe Snuff Co. v. Wolff, 206 Fed. 423, 124 C. C. A. 305, the court said:

"A proper test is whether, taking into account the resemblances and differences, the former are so marked that the ordinary purchaser is likely to be deceived thereby"—citing many authorities also.

In Samson Cordage Works v. Puritan Cordage Mills, 211 Fed. at page 608, 128 C. C. A. 208, L. R. A. 1915F, 1107 the court, in speaking of unfair competition, said:

"The existence of a valid trade-mark is not essential to a right of action for unfair competition, * * * in which action the essence of the wrong consists in the palming off of the merchandise of one for that of another"—citing many authorities.

Referring to this latter case the court, in Auto Acetylene Light Co. v. Prest-O-Lite Co. (C. C. A.) 264 Fed. 812, said:

"The essence of the wrong complained of consists in the palming off of the defendant's Acetylene gas for plaintiff's Prest-O-Lite gas"—also citing other authorities.

And in O. & W. Thum Co. v. Dickinson, 245 Fed. at page 613, 158 C. C. A. 41, the court, speaking through Judge Warrington, said:

"It is to be observed, moreover, that in testing the charge of infringement, as well as that of unfair competition, consideration must be given to the question whether the resemblances so far dominate the differences as to be likely to deceive ordinary purchasers; and the purchasers most to be considered are the ultimate users, rather than jobbers and retailers, since they, like all middlemen, are interested in and have the means of identifying the manufacturers of the goods they purchase."

This proposition is also supported by many citations. Much of what was said by the same court in the very recent case of Upjohn Co. v. W. S. Merrell Chemical Co. (No. 3295), 269 Fed. 209, may have importance here, where the facts are such as we have found them upon the testimony to be.

[4] This brings us to the case of Schlitz Brewing Co. v. Houston Ice Co., 250 U. S. 28, 39 Sup. Ct. 401, 63 L. Ed. 822, where it is shown that the question in such cases is "whether any so-called imitation achieves the deception" of purchasers. There is hardly a pretense of testimony in this case that the defendant's brand "Southern Star" achieved a single deception at any time since the beginning of its use by the defendants—a period of at least seven years and probably more. And indeed this is not surprising, when we suppose that any ordinary person looks at one brand while acquainted with the other. The specimens we have heretofore inserted should demonstrate that any ordinarily observant person, looking at either one or the other, or both, could not suppose that the two were the same. Certainly "Southern Star" is a different thing from the simple word "Star" or any emblem thereof, just as it is different from the words "Armour's Star." And it is difficult to consider the testimony and ascertain from it that there have, in fact, been any deceptions, though it may be that one or two persons, possibly "tricky retailers," have themselves attempted to deceive others. This, however, does not appear from any part of the testimony to have been successful, and it may be well at this point to cite further from the opinion in Rathbone, Sard & Co. v. Champion

Steel Range Co., 189 Fed. on pages 32 and 33, 110 C. C. A. 596, 37 L. R. A. (N. S.) 258, supra, where the court used this language:

"There is some evidence tending to show an actual deception of customers on the part of dealers by representing defendant's heater as that of complainant. It also appears that on the inside of some of the castings of defendant's heater, due to the use of parts of complainant's heater as patterns, the letters 'A' and 'Sol. A' are found, and that this fact would enable a dishonest dealer to misrepresent defendant's heater as a 'Solar Acorn.' This last consideration does not impress us as important, and there is no evidence of actual deception thereby. So far as concerns actual misrepresentations by dealers of the identity of heaters, not only is the proof thereof not highly convincing, but defendant is not responsible for the fact that tricky retailers represent its manufacture as that of complainant, knowing better, provided defendant has done its legal duty in distinguishing its own product from that of complainant. Royal Baking Powder Co. v. Royal, 122 Fed. 345, 58 C. C. A. 499; Hall's Safe Co. v. Herring, etc., Co., 146 Fed. 43, 76 C. C. A. 495, 14 L. R. A. (N. S.) 1182."

Of course, we have not overlooked cases like United Drug Co. v. Rectanus Co., 248 U. S. 90, 39 Sup. Ct. 48, 63 L. Ed. 141; but, while they might support the theory upon which plaintiff brought this action, they seem to have little or no bearing on the case actually presented by the testimony.

Upon these considerations, which might be indefinitely enlarged by citations of authorities, we have come to the further conclusion that the plaintiff has not established the essential element of the relief claimed upon the charge of unfair competition. Not only do the brands upon their respective faces show the distinctive differences between that of plaintiff and that of defendant, but there has been a failure upon the part of the plaintiff to establish by satisfactory testimony the fact of deception of any of those who purchase hams and bacon either for use or otherwise.

It results that the bill must be dismissed.