### SPICER v. W. H. BULL MEDICINE CO.
### Patent Appeal No. 2741.

Court of Customs and Patent Appeals.
May 25, 1931.

Joseph W. Milburn, of Washington, D. C. (John A. Griesbauer, of Washington, D. C., of counsel), for appellant.

John D. Rippey and Laurence C. Kingsland, both of St. Louis, Mo., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Commissioner of Patents of the United States Patent Office, affirming a decision of the Examiner of Interferences, sustaining the petition of appellee for the cancellation of registration No. 207,451, issued to appellant on January 5, 1926, and holding that said registration should be cancelled.

Appellant's registration is for a mark consisting of the notation "Spicer's Nux Herbs and Iron," the name "Spicer's" appearing as a facsimile signature, and the words "and Iron" appearing under the words "Nux Herbs." Included in the description of the mark is the following: " * * * No claim being made to the name 'Spicer's' or the words 'Nux,' 'Herbs,' and 'Iron,' except in the manner shown. * * * "

It is stated in the application that the mark is applied to "liquid medicine in the form of a general tonic and laxative," and has been so applied since December 19, 1917.

Appellee's petition for cancellation is based upon the alleged use by it and its predecessor in business, since prior to 1879, of a composite mark containing the words "Herbs and Iron," as applied to a medicinal preparation. Appellee alleges that said words constitute a predominant and distinguishing feature of said mark. Registration of this mark is also alleged, the registration being No. 80,703. It is further alleged that the descriptive significance, if any, of the words "Herbs and Iron" became lost, due to long use by appellee, whereby a secondary meaning arose indicating origin of the goods to which the mark is applied in appellee.

Appellant's answer to the petition for cancellation denies all of its allegations except as to the issuance of said registration No 80,703, and as to said registration denies that it was duly registered, and alleges that it is invalid and ineffective in so far as it may purport to be a registration of the words "Herbs and Iron" alone.

Both parties took testimony.

It appears that said registration No. 80,703 was granted to appellee on January 24,

1911, under the ten-year clause of the Trade-Mark Act of February 20, 1905 (15 USCA § 85). The mark, as shown in said registration, consists of the words "W. H. Bull's" at the top, beneath which are the words "Herbs and," and between these words and the word "Iron" is a fanciful picture containing many features:

The goods to which the respective marks are applied are clearly of the same descriptive properties and are so conceded to be by the parties.

The tribunals of the Patent Office concurred in holding that the words "Herbs and Iron" are descriptive in a primary sense, but that, since appellee's registration was granted under the ten-year clause of section 5 of said Trade-Mark Act (15 USCA § 85), its mark must be given the effect, both for the purpose of registration and in determining the question of the likelihood of confusion, of a valid trade-mark. The Commissioner expressly found that appellee's registration was duly made and was valid, and held that the two marks were confusingly similar, thus affirming the decision of the Examiner of Interferences.

It is apparent from the decision of the Commissioner that he regarded the words "Herbs and Iron" as the essential feature of appellee's mark, and for that reason held that the marks were confusingly similar.

We think the Commissioner erred in holding that the words "Herbs and Iron" are the essential or dominant feature of appellee's mark. In appellee's application, upon which the registration was issued, it is stated that it adopted the mark "for a medicinal preparation made from herbs and iron." We think it apparent that these words were used in the mark solely to describe the goods, and that the essential and dominant features of the mark were the name "W. H. Bull's" and the pictorial representation. We may say, in passing, that the words "Trade Mark" are found in the oval containing the picture and above the word "Iron."

The testimony shows that appellee manufactures a number of medicines in addition to "W. H. Bull's Herbs and Iron," among them "Bull's Liver Pills" and "Bull's Oil Liniment." If the contention of appellee is well founded, as held by the tribunals of the Patent Office, if appellee could establish ten years' exclusive use of "Bull's Liver Pills" and "Bull's Oil Liniment" prior to February 20, 1905, it could secure a monopoly of the words "Liver Pills" as a mark for medicine in pill form for liver diseases, and of the words "Oil Liniment" for any liniment containing oil.

We have carefully examined the voluminous testimony in the case, and it is clearly established that appellee never made a trade-mark use of the words "Herbs and Iron," standing alone, but its trade-mark use was always the words "W. H. Bull's Herbs and Iron," either with or without the pictorial representation.

Furthermore, we think the evidence clearly shows that purchasers did not rely upon the words "Herbs and Iron" as indicating origin of the goods. The testimony fairly establishes that retail customers ordinarily called for either "Bull's Herbs and Iron" or "Spicer's Nux Herbs and Iron." The testimony shows that appellee's representative went to a number of drug stores and called for "Herbs and Iron." In some instances he was sold "Spicer's Nux Herbs and Iron," in others he was asked if he wanted "Spicer's Herbs and Iron," and in one instance he was asked whether he desired "Spicer's" or "Bull's" Herbs and Iron. It is the contention of appellee that this testimony shows confusion, and that, because there was a greater profit to the druggist in selling "Spicer's Nux Herbs and Iron" than in selling "W. H. Bull's Herbs and Iron," druggists would palm off appellant's goods for those of appellee. We think, however, that this does not constitute any proof of palming off or of deception. When a customer asked for a medicine as "Herbs and Iron," the druggist would understand him to make the inquiry in a descriptive sense, and the natural inquiry, where the druggist handled more than one such preparation, would be whether the customer desired "Bull's" or "Spicer's" or some other preparation of herbs and iron, of which there were a number on the market when the testimony herein was taken.

We are of the opinion that appellee's mark must be considered as a whole, and, so regarding it, there is no confusing similarity between it and the mark of appellant, and that the Commissioner of Patents erred in this respect.

Appellee further contends that, regardless of any statutory right it may have by virtue of its registration, the testimony shows that it has established a secondary meaning of the words "Herbs and Iron" entitling it to the exclusive use of those words, and that appellant has not the right to use them in a descriptive sense or otherwise.

It should be noted that appellant claims no exclusive right to the words "Herbs and

Iron" apart from its mark, and has expressly disclaimed such words in its application.

It is clear that appellant uses the words "Herbs and Iron" in their primary and not in any secondary sense, and that, whether or not appellee has established a secondary meaning of said words, appellant can not be deprived of their use in a primary sense, provided he uses them in a way that is not deceptive to the public.

The Commissioner, in his decision, quoted at length from the opinion in the case of Thaddeus Davids Co. v. Davids, 233 U. S. 461, 34 S. Ct. 648, 651, 58 L. Ed. 1046, to the point that a registration under said ten-year clause is a valid trade-mark, which point we do not controvert. That case involved the registration under said ten-year clause by Thaddeus Davids Company of the name "Davids" used upon ink. The defendants used the name "C. I. Davids" in a similar manner upon the same kind of goods.

The court there did not hold that such registration of the word "Davids" under said ten-year clause gave the complainant the exclusive right to that word. The court said:

" * * * It is not to be supposed that Congress intended to prevent one from using his own name in trade, or from making appropriate reference to the town or city in which his place of business is located; and we do not find it necessary to consider the question of the validity of such an attempt if one were made. Congress has admitted to registration the names or terms belonging to the class under consideration simply because of their prior use as trademarks, although they had not been such in law. Their exclusive use as trademarks for the stated period was deemed, in the judgment of Congress, a sufficient assurance that they had acquired a secondary meaning as the designation of the origin or ownership of the merchandise to which they were affixed. And it was manifestly in this limited character only that they received statutory recognition, and, on registration, became entitled to protection under the act.

"In the case, therefore, of marks consisting of names or terms having a double significance, and being susceptible of legitimate uses with respect to their primary sense, the reproduction, copy, or imitation which constitutes infringement must be such as is calculated to mislead the public with respect to the origin or ownership of the goods, and thus to invade the right of the registrant to the use of the name or term as a designation of his merchandise. * * * "

In this case, the court did not prevent the defendant from using the word "Davids" as applied to ink, but enjoined it from so using the name as to simulate complainant's mark.

We think it is well established by the above and other cases that, even where a secondary meaning of a word is established, others have the right to use such word in its primary sense, provided it is so used as not to lead the public to believe that it is purchasing the goods of one who has established such secondary meaning.

In the case of Elgin National Watch Co. v. Illinois Watch Case Co., 179 U. S. 665, 21 S. Ct. 270, 275, 45 L. Ed. 365, the court, after reviewing a number of cases upon the subject of secondary meaning of a descriptive mark, said:

"These and like cases do not sustain the proposition that words which in their primary signification give notice of a general fact, and may be used for that purpose by every one, can lawfully be withdrawn from common use in that sense; but they illustrate the adequacy of the protection from imposition and fraud in respect of a secondary signification afforded by the courts.

"In the instance of a lawfully registered trade-mark, the fact of its use by another creates a cause of action. In the instance of the use in bad faith of a sign not in itself susceptible of being a valid trademark, but so employed as to have acquired a secondary meaning, the whole matter lies in pais."

The case of Kellogg Toasted Corn Flake Co. v. Quaker Oats Co., 235 F. 657, decided by the United States Circuit Court of Appeals, Sixth Circuit, is similar in many respects to the case at bar. It involved the right of the Kellogg Company to the exclusive use of the words "Toasted Corn Flakes." There, as here, the descriptive words alone had never been used as a trade-mark, and the court held that the word "Kellogg's" could not be dissociated from the words "Toasted Corn Flakes," and a meaning given to said words which had never been relied upon by the Kellogg Company. The law as to secondary meaning of marks was also fully discussed, and it was held that, where a manufacturer establishes in a descriptive word a secondary meaning, as indicating his goods, he is entitled as against another to only such protection as will prevent such other from using that term to pass off his goods as those of the original appropriator.

The case of Maatschappij Tot Exploitatie Van Rademaker's Koninklijke Cacao & Chocoladefadrieken v. Kosloff et al., 45 F.(2d)

94, 96, 6 U. S. Pat. Quart. 133, decided by the United States Circuit Court of Appeals, Second Circuit, involved the marks "Rademaker's Hopjes" and "Frank Rademaker's Hopjes," "hopjes" being the Dutch word for a species of candy. Plaintiff had registered under the ten-year clause of said Trade-Mark Act of February 20, 1905, the words "Rademaker's Hopjes," which registration was sustained by this court in the case of Maatschappij, etc., v. Rademaker, 41 F.(2d) 406, 17 C. C. P. A. 1260. The Circuit Court of Appeals expressly concurred with said conclusion of this court, and further held that a secondary meaning had been established of the words "Rademaker's Hopjes." The court said: "Clearly plaintiff had and has no exclusive right to the Dutch word 'Hopjes.' It has not used that word alone, to indicate the origin of a species of candy; it has always coupled it with 'Rademaker.'"

It further held that Frank Rademaker, for whom the defendant was the agent, had the right to call his product "Frank Rademaker's Hopjes," provided, in so doing, he made it clear that they were his own and not plaintiff's product.

It is unnecessary to cite further authority upon this point.

Appellant's use of the words "Herbs and Iron" is in their primary sense. The record clearly shows that it relies upon the word "Spicer's" to indicate origin of its goods and not the words "Herbs and Iron," and that in its advertising and labels it emphasizes the word "Spicer's."

Therefore, while we do not believe that the evidence establishes a secondary meaning of the words "Herbs and Iron" as indicating origin of appellee's product, even were it otherwise, appellant is using the words in their primary and not their secondary sense, in a proper way. We may say, in passing, that much of appellee's testimony as to a secondary meaning of the words "Herbs and Iron" is to the effect that customers often ordered from appellee its product under the words "Herbs and Iron." We do not think such testimony tends to establish a secondary meaning, because, when orders were given to appellee for "Herbs and Iron," it was naturally understood that "W. H. Bull's Herbs and Iron" was meant.

In view of the conclusion we have reached, it is unnecessary to consider the contention by appellant that appellee's registration is invalid, or whether such question could properly be considered by us in this proceeding. We hold that the petition of appellee should be dismissed.

The decision of the Commissioner of Patents is reversed.

Reversed.

BLAND, Associate Judge (specially concurring).

I agree with the conclusion of the majority that confusion is not likely to result between the trade-mark "W. H. Bull's Herbs and Iron," associated with an elaborate pictorial representation and appellant's registration "Spicer's Nux Herbs and Iron," the word "Spicer's" appearing as a facsimile signature.

I am not convinced that the phrase "Herbs and Iron" is not the "dominant feature" of appellant's mark, and, in my view, this consideration is not important to the decision of the case.

Although appellee registered, under the ten-year clause, its mark containing the words "Herbs and Iron," and although the term is presumed to have acquired a secondary meaning, it is not the exclusive property of the registrant to the extent that registrant can prevent any one else from using the term if the other, in using same, so uses it as to avoid confusion of origin. Thaddeus Davids Co. v. Davids, 233 U. S. 461, 34 S. Ct. 648, 58 L. Ed. 1046.

Irrespective of which is the dominating part of appellee's mark, appellant, under the circumstances of this case, has no right to use this part of appellee's valid trade-mark, which is presumed to acquire a secondary meaning, without including in its mark other matters which are sufficient to make confusion in origin improbable. This, I think, appellant has done, and I therefore specially concur in the result.