## HEMMETER CIGAR CO. v. CONGRESS CIGAR CO., Inc.

### No. 8505.

Circuit Court of Appeals, Sixth Circuit.

March 14, 1941.

David S. Kane, of New York City (Duell & Kane and Philip T. Dalsimer, all of New York City, on the brief), for appellant.

Harold H. Armstrong, of Detroit, Mich. (Armstrong, Weadock, Essery & Helm, of Detroit, Mich., on the brief), for appellee.

Before HICKS, SIMONS, and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

This is an appeal from a final decree denying relief in a trade-mark infringement and unfair competition suit, brought in the District Court to protect appellant's registered trade-mark, "Champion," used in relation to its principal brand of cigars. The District Judge, in dismissing the complaint, adopted the opinion-report, findings of fact and legal conclusions of a Special Master, to whom he had referred the cause.

### The Findings of Fact

The Special Master found that since 1895 the appellant company, whose president's father was its founder, has manufactured and distributed to some extent in thirty-seven states of the Union—although the great bulk of sales were made in Michigan, Ohio and Indiana, with Michigan sales predominating—the brand of cigars in controversy "either under the mark 'Champion' or 'Hemmeter's Champion' (it being sharply contested between the parties as to which of these has been used as its mark)"; that, quite clearly, the appellant has been using its mark in interstate commerce; and that the registration of the trade-mark "is now in force."

The Master found further that appellant has built up in the territory of distribution considerable goodwill attributable to the quality of its "Champion" Cigars and to diversified advertising, including counter displays, window streamers, billboards, and radio and newspaper advertisements, of which last mentioned the most recent were "built around a sport motif, the similarity between champions in athletics and Champion Cigars having been stressed."

In recent years, appellant made some effort to expand its sales westward, but with small success. Appellant manufactures two other brands of full-size cigars and two brands of small cigars, but the marketing of these off brands has been quite limited.

In most of its advertisements, the two words, "Hemmeter's Champion," have been combined, but a foil card issued in various

color combinations for window display and distributed prior to 1932 bore the single slogan, "Enjoy a Champion 5¢ Cigar."

According to the Master, "the evidence indicates" that the cigar has been known to customers "in the wholesale jobbing trade and in the retail field as well as to the consuming public by several names, including 'Hemmeter's Champion,' 'Hemmeter's,' 'Champion,' and 'Champs.'" Conceding conflicting testimony of retailers and consumers, the Master infers that "generally speaking," the cigars "are called for by the full name 'Hemmeter's Champion,' or 'Champion' and very rarely by the contraction 'Champ' or 'Champs.'" The record contains numerous orders received by appellant, chiefly from jobbers, for "Champ" or "Champs," but the cigars have never been advertised under such names.

The appellant bases its cause of action against the appellee company, a subsidiary of one of the leading cigar manufacturers of the United States, upon the use by appellee of the word "Champs" in connection with a brand known as "Portina Champs," imported from Porto Rico and first marketed in the summer of 1936 as an addition to a complete line of Portina cigars, widely distributed throughout the south.

According to the testimony of the vice-president of appellee company "Portina Champs" were put upon the market to meet the increased demand, since the depression of 1929, for cheap machine-made cigars, packed several to the carton. The witness asserted that the selection of the name "Champs" was made without knowledge of the existence of appellant's product and that the registry of trade-marks was not checked, because the term "Champs" was to be confined to use as a "frontmark," which is a kind of grademark to denote the shape and size of a cigar.

The Master considered this testimony "convincing" and found "as a conclusion of fact that defendant [appellee] had no intention (other than the constructive intent which might arise from its failure to make an adequate investigation of existing trade-marks on cigars) to simulate the plaintiff's [appellant's] trade-mark or style of packaging, or to capitalize on the goodwill created by the sale of plaintiff's cigar." He added that the packages of the contending parties bear *no remote resemblance* and he deemed it "unlikely" that a cigar company of the "magnitude" of appellee,

"in bringing out a brand for national distribution, should deliberately name and design it in such a way as to steal the goodwill of a relatively small company whose business is largely confined to one state."

Appellee's Portina Champs are small-size cigars or "Cheroots." They are machine-processed, with an unfinished wrapper of tobacco leaf and are packed in units of five in a paper and cellophane wrapper, with the brand name "Portina Champs" imprinted in red and white on paper with a brown background. These cigar packages are enclosed in a red cardboard container, on the outside cover of which appear the words "Portina Champs," the word "Champs" being distinctively set off in letters of smaller size and different style from the printing of "Portina." On the cover of the paper container are displayed five athletic figures: a baseball player, a polo player, a golf player, a tennis player and a swimmer in the act of diving. There is also displayed the slogan, "5 for 10."

The Special Master thus describes appellant's full-size cigar, which, in two different shapes, is retailed at five cents: "It is packed in cigar boxes of the usual size and shape with the name imprinted inside of the cover in large letters in a combination of red, white and gold as 'Hemmeter's Champion,' the word 'Hemmeter's' being in a slightly larger and somewhat different style of type than 'Champion.' The same 'Hemmeter's Champion' also appears on both ends of the outside of the box in similar style; and also on three of the inner sides of the box, the 'Hemmeter's' being in type of the same size as 'Champion' and the words coming into view as cigars are withdrawn from the box. The cigar, itself, has been wrapped in a variety of ways over the period of its manufacture. At one time the words 'Hemmeter's Champion' were impressed upon the cigar itself, with no additional wrapping. For about the last two years, however, each cigar has been wrapped in foil with the word 'Champion' impressed in small letters on the foil. The cigar band bears the name, 'Hemmeter's Champion.'"

The Master thus concludes his findings of fact: "No evidence was submitted by plaintiffs in the trial of this cause of any actual instances of confusion of its customers, reliance being placed rather upon the alleged likelihood of confusion which the court might infer from the evidence as to the use of the respective marks by plain-

tiff and defendant and upon the results of an investigation made by special investigators hired by plaintiff. * * *"

## The Law of the Case

I. It was the unsuccessful contention of appellee before the Master, repeated here, that the registered trade-mark of appellant is invalid for the reason that "Champion" is a descriptive term, denoting the "character or quality" of the product.

A similar contention was rejected by this court in Thomas G. Plant Co. v. May Co., 105 F. 375, in which it was held that the word "Queen," used by a manufacturer of ladies' shoes to designate its product, is not essentially one which signifies quality, so as to preclude its appropriation as a trade name. It was pointed out that such words as "King," "Monarch," "Kaiser," "Royal," "Victor," "King Bee" and "Pillsbury's Best" have been judicially sanctioned as trade names.

In our judgment, the word "Champion" plainly falls within the same category and may lawfully be appropriated as a trade-mark. Recognition of its validity has been accorded by the United States Patent Office, and registration by the Patent Office raises a presumption of validity. Chapin-Sacks Mfg. Co. v. Hendler Creamery Co., 4 Cir., 254 F. 553, 556. Compare Hughes v. Alfred H. Smith Company, D.C., 205 F. 302, affirmed in 2 Cir., 209 F. 37, in which the word "Ideal" was held to be a valid trade-mark as applied to brushes.

II. Appellee submits that because the distribution of "Portina Champs" was exclusively *intrastate*, appellant has no cause of action for trade-mark infringement. The question seems academic, for the reason that in Hurn v. Oursler, 289 U. S. 238, 53 S.Ct. 586, 77 L.Ed. 1148, where a claim of copyright infringement was embraced in the same bill with a claim for unfair competition under state law, both claims being based on the same acts, the Supreme Court held that, although the federal copyright claim must be rejected on its merits, the federal court still had jurisdiction to decide the unfair competition claim on its merits, because a federal question had been raised on the pleadings.

The same situation is found here. Therefore, jurisdiction should be retained to grant appropriate relief; not embracing any specific remedies provided by the Federal Act, but within the broad confines of the field left open by the express provision of the Act of 1905, Section 23, 15 U.S.C.A. § 103, to the effect that "Nothing in this Act [subdivision of this chapter] shall prevent, lessen, impeach, or avoid any remedy at law or in equity which any party aggrieved by any wrongful use of any trade-mark might have had if the provisions of this Act [said subdivision] had not been passed."

III. We are unable to concur in the legal conclusion of the Special Master, thus expressed: "While certain advertising material put in evidence referred to 'Champion' alone and while it appears a large share of its customers call for the cigar by that name, it is difficult in view of the above facts to escape the conclusion that plaintiff's real mark is the compound word 'Hemmeter's Champion' rather than 'Champion' alone. The situation resembles that in Kellogg Toasted Corn Flake Co. v. Quaker Oats Co., 6 Cir., 235 F. 657, where it was held that, because of plaintiff's advertising, its mark was 'Kellogg Toasted Corn Flakes' rather than 'Toasted Corn Flakes,' although doubtless many customers called for the product without designating the maker's name. See also Spicer v. W. H. Bull Medicine Co., Cust. & Pat. App.1931, 49 F.2d 980."

We find no true similarity between the facts found by the Master in the instant case and those described in the Kellogg-Quaker Oats case, supra. Unlike the word "Champion," the expression "Toasted Corn Flakes" is descriptive of the product. When applied to thin flakes of white corn, toasted or browned by heat, the words were held not to be the subject of trade-mark. We have already shown on the authority of the Plant Company case, supra, that the word "Champion," when applied to cigars, is a valid trade-mark. Furthermore, in the Toasted Corn Flakes case, the evidence was insufficient to show that the descriptive phrase had generally acquired such secondary meaning indicating Kellogg's product as to become a trade-mark.

In the case before us, the Master found as a matter of fact that a large share of appellant's customers call for the cigar by the name "Champion." The name, then, has become indicative of the origin of the cigar. It has acquired a secondary meaning indicating Hemmeter's goods, for which appellant has acquired a valuable goodwill resultant from the quality of its product and from diversified advertising.

■ Where words have acquired a secondary meaning with respect to a man's merchandise, he is entitled to relief against anyone subsequently using the words in a manner likely to enable the later user to sell his wares as the product of the earlier. Computing Scale Company v. Standard Computing Scale Co., 6 Cir., 118 F. 965; Shaler Company v. Rite-Way Products Co., 6 Cir., 107 F.2d 82, affirming with modification, D.C., 19 F.Supp. 804.

In the other cases cited by the Master, the controversial words, "Herbs and Iron," were also descriptive. Spicer v. W. H. Bull Medicine Co., Cust. & Pat.App., 49 F. 2d 980, 981. The Court of Customs Appeals said: "When a customer asked for a medicine as 'Herbs and Iron,' the druggist would understand him to make the inquiry in a descriptive sense, and the natural inquiry, where the druggist handled more than one such preparation, would be whether the customer desired 'Bull's' or 'Spicer's' or some other preparation of herbs and iron, of which there were a number on the market when the testimony herein was taken."

Counsel for appellee places much dependence upon Armour & Co. v. Louisville Provision Co., 6 Cir., 283 F. 42, and upon the District Court opinion which it affirmed, 275 F. 92. The holding was that the evidence did not establish the adoption of the word "Star" as a trade-mark independently of the name of the corporation, "Armour," with which it was used in combination, and consequently that the use of the words, "Southern Star," by another meat products packer did not infringe. The opinion of this court at page 45 of 283 F. declared, however, that the word "Star" or a symbol thereof "should be regarded as fanciful and as suggestive, rather than as purely descriptive, and thus as capable of being made the subject of a valid trade-mark * * *." The Plant Company case, supra, and Menendez v. Holt, infra, were cited to support the text. It was stated that "the question whether plaintiff or its predecessor actually adopted as its trade-mark the word 'Star,' or a symbol thereof, as distinguished from a trade-mark 'Armour's Star,' is distinctly one of fact, the affirmative of which plaintiff has the burden of establishing. In our opinion, plaintiff has not sustained this burden."

Furthermore, it was pointed out in the District Court opinion that it had not been proved that the word "Star" had acquired a secondary meaning indicating origin of goods. 275 F. 92, 101.

■ In the record under review, there is abundant proof that the word "Champion" has acquired a secondary meaning indicating appellant's cigar. The Master found that customers repeatedly order appellant's product by the sole designation "Champion"; he correctly concluded that the "mark 'Champion' is not descriptive and was properly registered under the Act of 1905, 15 U.S.C.A. § 81 et seq."; but, by a hiatus in logical reasoning, he deduced that appellant's "real mark is the compound word 'Hemmeter's Champion' rather than 'Champion' alone." The District Judge upheld him in this material error.

IV. It is insisted that, even if "Champion" is deemed a valid trade-mark, there has been no infringement or unfair competition by appellee. The entire substantive law of trade-marks is a branch of the broader law of unfair competition. Merriam Co. v. Saalfield, 6 Cir., 198 F. 369, 372; United Drug Co. v. Rectanus Co., 248 U. S. 90, 97, 39 S.Ct. 48, 63 L.Ed. 141. It will be convenient, therefore, to consider the question of trade-mark infringement along with the topic of unfair competition.

■ With reference to the authorities which we are about to cite or quote, we would repeat the words of this Court: "Reported cases are helpful only in so far as they lay down general rules of decision. The question of infringement must be determined upon the particular facts of the case in hand." Coca-Cola Co. v. Carlisle Bottling Works, 6 Cir., 43 F.2d 119, 121.

■ V. (1) In unfair competition, as also in violation of trade-mark rights, the essence of the wrong is the sale of the goods of one manufacturer or merchant for those of another. Hanover Star Milling Company v. Metcalf, 240 U.S. 403, 412, 413, 36 S.Ct. 357, 60 L.Ed. 713; Prestonettes, Inc. v. Coty, 264 U.S. 359, 368, 44 S.Ct. 350, 68 L.Ed. 731.

Consider the scintillant saying of Judge Learned Hand: "* * * a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask. And so it has come to be recognized that, unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful." Yale Electric Corporation v. Robertson, 2 Cir., 26 F.2d 972, 974. Compare Del Monte Special Food Co. v. California

Packing Corporation, 9 Cir., 34 F.2d 774, 775.

In Western Oil Refining Co. v. Jones, 6 Cir., 27 F.2d 205, it was said: "Upon the question of infringement, the test, as frequently announced by this court is whether the alleged infringing trade-mark or label, taken as a whole, so far resembles the other mark or label as to be likely to be mistaken for it by the casual or unwary purchaser." The previous decisions cited were Ohio Baking Co. v. National Biscuit Co., 6 Cir., 127 F. 116; W. A. Gaines & Co. v. Turner-Looker Co., 6 Cir., 204 F. 553; and DeVoe Snuff Co. v. Wolff, 6 Cir., 206 F. 420, 423, 424. In the case last listed, it was asserted that "it may be true that the cautious and discriminating purchaser is not likely to be so misled; but the protection accorded to a trade-mark is not limited to the cautious and discriminating customer, but embraces the 'ordinary' or 'unwary' purchaser as well."

Likewise, in Florence Manufacturing Co. v. J. C. Dowd & Co., 2 Cir., 178 F. 73, 75, it was said: "The law is not made for the protection of experts, but for the public— that vast multitude which includes the ignorant, the unthinking, and the credulous, who, in making purchases, do not stop to analyze, but are governed by appearances and general impressions."

In E. Kahn's Sons Co. v. Columbus Packing Co., 6 Cir., 82 F.2d 897, 900, unfair competition was found to exist in that the similarity of markings was considered "likely to deceive the eye of ordinary purchasers, neither cautious nor discriminating, and lead them to believe that they were buying appellant's lard." See, also, De Nobili Cigar Co. v. Nobile Cigar Co., 1 Cir., 56 F.2d 324, 326, where it was stated that the origin of an article is indicated by the word which the evidence shows is employed in asking for and selling the article. The appearance of the package was deemed of minor importance for it was said many people "call for the goods who have never seen the package, or have forgotten its appearance, or are careless or indifferent of all save that they wish that particular cigar known as 'De Nobili.'"

The Circuit Court of Appeals for the Seventh Circuit has not minced words: "One entering a field of endeavor already occupied by another should, in the selection of a trade-name or trade-mark, keep far enough away to avoid all possible confusion." Northam Warren Corporation v. Universal Cosmetic Co., 18 F.2d 774, 775. The court adjudged that there is infringement where "one adopts a trade-name or a trade-mark so like another in form, spelling, or sound that one, with a not very definite or clear recollection as to the real trade-mark, is likely to become confused or misled."

To constitute unfair competition, the similarity of names need not be such as would actually deceive persons seeing the two commodities side by side. Ralston Purina Co. v. Western Grain Co., 5 Cir., 23 F.2d 253. Compare Vogue Company v. Thompson-Hudson Co., 6 Cir., 300 F. 509.

In the face of the sound reasoning of these authorities, the Master's conclusion on this record that "there is insufficient likelihood of confusion to entitle plaintiff to injunctive relief" is manifestly incorrect. True, as he asserts, there is slight resemblance in the packages of the contending parties; and the cigars, as well as the packages, differ in size and shape. Were the packages placed side by side, there is scant likelihood that a customer of the appellant would become confused in his choice. But, as we have seen, that is not the test.

The Master says that "no evidence was submitted by plaintiffs in the trial of this cause of any actual instances of confusion of its customers." We think, however, the testimony of two investigators employed by appellant to enter retail stores where cigars are sold in Detroit and elsewhere and to "ask for some Champs" revealed actual confusion among some retail dealers.

Proof positive of the certainty of confusion which must follow the use by appellee of the word "Champs" appears in the testimony of one of appellee's witnesses, Dr. Howell L. Begle, a Detroit physician who had smoked Hemmeter's Champion Cigars for thirty-five years. When asked, "What would the word 'Champ' when applied to a cigar signify to you as to origin?", the doctor answered, "I would catch myself using that term, and to me it would mean a Hemmeter Champion."

But, says the Master, "the term 'Champs' is never used by defendant alone but always in conjunction with and following 'Portina.'" He stresses the obviously inapplicable decision of this court in Coca-Cola Co. v. Carlisle Bottling Works, 43 F.2d 119, in which it was held that "Roxa Kola," when applied to a soft drink does not in-

fringe "Coca-Cola." He ignores entirely the pertinent doctrine of Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 144, 32 L.Ed. 526, in which, where a firm of merchants had for years used as a trade-mark the words "La Favorita" to designate flour selected by them, in the exercise of their best judgment, as equal to a certain standard, the Supreme Court held that the addition by an infringer of his name, in place of the owner's, to the trade-mark did not render such unauthorized use any less an infringement but on the contrary "is an aggravation, and not a justification, for it is openly trading in the name of another upon the reputation acquired by the device of the true proprietor." See, also, Thomas G. Plant Co. v. May Company, 6 Cir., 105 F. 375, 378, supra, and Leonard et al. v. White's Golden Lubricator Co., C.C., 38 F. 922.

■ (2) In our opinion, the District Judge erred in approving the Master's holding that appellee has used the word "Champs," not as a brand name for its cigars but "rather to designate one style or grade in the Portina line of cigars."

■ It is true that the owner of a trade-mark on a name cannot prohibit others from using that name as a grade mark to distinguish the quality of an article. Continental Corporation v. National Union Radio Corporation, 7 Cir., 67 F.2d 938; Columbia Mill Company v. Alcorn, 150 U. S. 460, 14 S.Ct. 151, 37 L.Ed. 1144. But, as we read the record in this case, there is no justification for the inference drawn by the Master and approved by the District Judge that the manner of usage by appellee of "Champs" classifies the word as a grade mark and not a trade-mark. Applying the principles of the cases which have been discussed, the reverse conclusion seems obvious. See, especially, Thomas G. Plant Co. v. May Co., supra, and cases there cited. See, also, Chesebrough Manufacturing Co. v. Old Gold Chemical Co., Inc., 6 Cir., 70 F.2d 383; and Ammon & Person v. Narragansett Dairy Co., D.C., 252 F. 276 (affirmed in 1 Cir., 262 F. 880), in which the comment was made at page 278 of the opinion that "neither subtractions from nor additions to a trade-mark proper will avoid infringement, when such imitation as is likely to lead to confusion still remains despite the changes."

■ (3) Assuming that appellant has failed to prove that appellee had knowledge of the former's trade-mark—although information could have been easily acquired by inquiry at the patent office—and assuming further that it has not been shown that appellee intended to reap the benefit of appellant's goodwill by palming off its own product for that of appellee, an injunction should nevertheless be granted to protect appellee's trade-mark. As was said in O. & W. Thum Co. v. Dickinson, 6 Cir., 245 F. 609, 615: "It is not necessary to the maintenance of a charge of infringement of a trade-mark to prove a distinct intent on the part of the infringer; it is the fact of infringement and the consequent invasion of the good will and business of the owner of the mark that is controlling; the intent will be presumed." See, also, De Voe Snuff Co. v. Wolff, 6 Cir., 206 F. 420, 424.

■ (4) We find ourselves in disagreement with the Master and the District Judge on another point. We think that protection should be afforded against confusion of potential future customers of the appellant. A trade-mark should not narrowly be limited to its precise present use by the owner, but room for reasonable expansion or alteration in the use of the mark should also be assured. Florence Mfg. Co. v. J. C. Dowd & Co., 2 Cir., 178 F. 73; Barton Mfg. Co. v. Hercules Powder Co., Cust. & Pat.App., 88 F.2d 708; Beech-Nut Packing Co. v. P. Lorillard Co., D.C., 299 F. 834; Peninsular Chemical Co. v. Levinson, 6 Cir., 247 F. 658; Western Oil Refining Co. v. Jones, 6 Cir., 27 F.2d 205.

While we have not agreed with the ultimate conclusions of the Special Master, in which the District Judge concurred, we have been much aided by his well done opinion-report, which manifests his conscientious care and intelligent, painstaking effort.

■ (5) We recognize and approve the doctrine that the protection of a trademark should be limited to appropriate trade territory. General Baking Co. v. Goldblatt Bros., Inc., 7 Cir., 90 F.2d 241. Michigan, Ohio and Indiana seem, from the evidence, to constitute the entire trade territory which appellant can justly claim. Accordingly, an injunction limited in scope to these three states will be granted by the District Court, as prayed in paragraphs two to ten, inclusive, of the prayer of appellant's bill of complaint. There will be no accounting ordered as prayed in paragraph eleven, for the reason that no actual wrongful intent to injure appellant has

been shown, and no substantial damage seems yet to have been inflicted upon appellant from the use by appellee of the trade-mark "Portina Champs."

Let the decree be reversed and the cause remanded for procedure in conformity with this opinion.